[S. F. No. 4305. In Bank.—December 19, 1908.]

# MARY A. L. BOLLINGER, Plaintiff-Respondent; WM. PULLAN and GEORGE PULLAN, as Executors of Will of Mary C. Pullan, Deceased, Cross-Complainants, Respondents, v. GEORGE Y. BOLLINGER, Appellant.

EXPRESS TRUST FOR CHILDREN OF DECEASED FATHER—UNTENABLE ACTION BY WIDOW—CROSS-COMPLAINT BY EXECUTORS OF DECEASED CHILD.—When land is sufficiently shown to have been taken by the defendant from a father, upon the express trust that upon his death it should be divided equally between his five children by a former wife, and his widow has brought an untenable action to enforce a trust, the executors of a deceased child made defendant, may by cross-complaint enforce such express trust in her favor as a beneficiary of one fifth thereof.

ID.—DISTRIBUTION OF ESTATE PRIOR TO CROSS-COMPLAINT—EXECUTORS NOT DISCHARGED—CAPACITY TO SUE—WAIVER OF OBJECTION.— Although the estate of the deceased child had been distributed prior to the filing of the cross-complaint, yet, when the executors have not been discharged and there is no pretense that the land sued for has been received for the benefit of the estate, the objection that they cannot recover goes to their capacity to sue, and must be deemed waived when not presented by answer to the cross-complaint.

ID.—ADMISSIONS OF CROSS-COMPLAINT—RIGHTS OF EXECUTORS TO SUE FOR BENEFIT OF ESTATE.—When the cause of action alleged and found belonged to the deceased child at the time of her death, and the allegations of the cross-complaint allege her death, and the due appointment of respondents as her executors, and the issuance to them of letters testamentary which have not been revoked or discharged, and that they are still the duly qualified and acting executors of the estate, and they are not denied or countervailed in the answer, under such admitted allegation they were entitled to sue for any rights for her benefit belonging to the estate.

ID.—TERMS OF TRUST PRIOR TO FATHER'S DEATH IMMATERIAL.—The terms of the trust in favor of the father prior to the father's death are immaterial to the cause of action stated in the cross-complaint as to the trust in favor of his children upon his death.

ID.—IMMATERIAL VARIANCE BETWEEN FINDINGS AND ALLEGATIONS.— Any variance between the findings and allegations, having no relation to the cause of action to enforce the trust are immaterial thereto, and could not have misled defendant to his prejudice in relation thereto.

ID.—SUFFICIENCY OF EVIDENCE TO· ESTABLISH TRUST—QUESTION FOR TRIAL COURT.—Notwithstanding the well-settled rule that to prove a trust by parol under a conveyance absolute in its terms, the evidence must be clear, satisfactory, and convincing, yet its proper application when there is substantial evidence to support the existence of a trust must be left largely to the trial court, and its determination that it is clear, satisfactory, and convincing will be accepted by the appellate court as conclusive. *Held,* upon a review of the evidence, that it was sufficient to establish a trust and to show the purposes, subject-matter, and beneficiaries thereof.

ID.—ERRONEOUS ADMISSION OF EVIDENCE—DECLARATIONS OF GRANTOR AFTER DEED.—The court erred to the prejudice of the appellant in admitting declarations of the father subsequent to his deed to establish the alleged trust. The declarations of a grantor made after his conveyance cannot be received to disparage his deed.

ID.—ERROR IN ADMITTING INDEPENDENT STATEMENTS OF WITNESS.— When a witness for respondents, called to prove declarations of appellant and his grantor gave no affirmative testimony, but denied that he had heard any declarations of either, it was prejudicial error to permit the respondents over appellant's objection to prove independent statements made by such witness to two different witnesses that he had heard appellant say that he was holding the property in trust for his brother and sisters, and that he heard the father say that he had confidence in his son, the appellant.

ID.—PLEADING—MISJOINDER OF CAUSES OF ACTION IN CROSS-COMPLAINT —DEMURRER—WANT OF PREJUDICE—RULE INAPPLICABLE ON RE-VERSAL.—The rule that where there is a demurrer to the cross-complaint for misjoinder of causes, and causes misjoined which exist only in favor of the estate of the deceased father are disposed of favorably to the appellant, and the only cause of action supported by the findings and evidence is a tenable one to enforce an express trust against appellant in favor of the cross-complainants, the misjoinder is without prejudice, and that the judgment will not be reversed for an error not affecting the substantial rights of the parties, can apply only when the judgment. is affirmed. It has no application when the judgment is necessarily reversed for other errors; but in such case, the court below will be instructed to sustain the demurrer, with leave to the pleader to elect upon which cause of action he will stand.

APPEAL from a judgment of the Superior Court of Santa. Clara County and from an order denying a new trial. M. H. Hyland, Judge.

The facts are stated in the opinion of the court.

Charles W. Slack, and V. A. Scheller, for Appellant.

Nicholas Bowden, for Plaintiff, Respondent.

T. C. Coogan, and L. B. Archer, for Cross-Complainants, Respondents.

E. E. Cothran, for Co-Defendant, Respondent.

HENSHAW, J.—The following opinion in the above-entitled cause was handed down by the district court of appeal of the first appellate district:

"This action was brought, by plaintiff Mary A. L. Bollinger, to have it decreed that certain property conveyed by the late husband of plaintiff, Christian Bollinger (now deceased) to George Y. Bollinger, without consideration, was community property of plaintiff and her late husband, and that George Y. Bollinger holds one half thereof in trust for plaintiff, etc., etc.

"Plaintiff made not only George Y. Bollinger, who is a son of Christian Bollinger, defendant, but also made the other children of Christian Bollinger, and William Pullan and George Pullan, as executors of the will of Mary C. Pullan, a daughter of Christian Bollinger, who died subsequently to his decease, and the children and certain grandchildren of said Mary C. Pullan, defendants.

"Answers were made to plaintiff's complaint by George Y. Bollinger as well as by others of the defendants, and upon the trial the findings and judgment were against plaintiff, and no appeal has been taken by her, or her representatives (she having died after the commencement of the action.)

"William Pullan and George Pullan, individually and as executors of the will of Mary C. Pullan, besides answering plaintiff's complaint, filed a cross-complaint against defendant, George Y. Bollinger, to which they also made all the other defendants as well as the plaintiff defendants, by which they sought to have it decreed that the same transfers of said property by Christian Bollinger to defendant George Y. Bollinger, were obtained through the undue influence and fraud of said George Y. Bollinger, and that ever since said transfers he has held the legal title to the property transferred in trust for Christian Bollinger until his death, and that therefrom he has held and now holds the legal title to one fifth of said property

in trust for cross-complainants, and that he be compelled to transfer one fifth thereof to said cross-complainants.

"Upon the trial of the issues made by said cross-complaint and the answer thereto of George Y. Bollinger, William and George Pullan, as executors of the will of Mary C. Pullan, recovered judgment to the effect that George Y. Bollinger holds in trust for said executors of the will of Mary C. Pullan one fifth of certain property therein described, and directing transfer thereof accordingly.

"From this judgment, and the order denying his motion for a new trial, said George Y. Bollinger has appealed.

"I. Appellant contends that reversible error was committed by the court in overruling his demurrer to repondents' cross-complaint. The cross-complaint contains two counts, and the demurrer is to each count. Appellant discovers in each count four distinct causes of action, to wit, (1) an alleged cause of action for undue influence exercised by George Y. Bollinger over Christian Bollinger; (2) an alleged cause of action for defrauding Christian Bollinger by George Y. Bollinger; (3) an alleged cause of action for defrauding the surviving children and the children of the deceased child of Christian Bollinger by George Y. Bollinger; and (4) an alleged cause of action to enforce a trust in favor of the surviving children and the children of the deceased child of Christian Bollinger.

"It is claimed that the two first alleged causes of action are actions that might have been brought by Christian Bollinger in his lifetime, and on his death passed to his estate, while the last two are actions in favor of his children, and in which his estate has no interest, and for this reason that said actions are improperly joined.

"It is certain that the cross-complaint does contain some allegations pointing to an action in favor of Christian Bollinger's estate; but on the trial of the action the court found against the allegations of the cross-complainant in this regard, and found such facts as support an action to establish and enforce a trust in favor of the children of Christian Bollinger, of whom Mary C. Pullan, respondents' testatrix, was one at the time of his death, and the decree enforces the trust in favor of the respondents as executors of her will only.

"The facts alleged and found bring the case, as to the rights of Mary C. Pullan, upon the death of Christian Bollinger,

clearly within the rule laid down in *Brison* v. *Brison,* 75 Cal. 525, [7 Am. St. Rep. 189, 17 Pac. 689] ; 90 Cal. 323, [27 Pac. 186] ; *Nordholt* v. *Nordholt,* 87 Cal. 552, [22 Am. St. Rep. 268, 26 Pac. 599] ; *Hayne* v. *Hermann,* 97 Cal. 259, [32 Pac. 171].

"The prayer of the cross-complaint sought only to enforce a trust in one fifth of the property conveyed, as a right that inured to Mary C. Pullan upon the death of Christian Bollinger and the repudiation of the trust by appellant.

"As before stated, the court found against the allegations of the cross-complaint and in favor of the appellant upon the matters tending to support actions in favor of the estate of Christian Bollinger. Under these circumstances we think it clear that appellant could not have been injured by the ruling of the court upon the demurrer, even though such ruling may have been erroneous. Judgment should not be reversed for errors that do not affect the substantial rights of the parties. (Code Civ. Proc., sec. 475; *Reynolds* v. *Lincoln,* 71 Cal. 183, [9 Pac. 176, 12 Pac. 449] ; *Angell* v. *Hopkins,* 79 Cal. 181, [21 Pac. 729] ; *Hirschfeld* v. *Weill,* 121 Cal. 13, [53 Pac. 402].)

"II. Upon the trial it was shown that prior to the filing of the cross-complaint, the decree of distribution of the estate of Mary C. Pullan, deceased, had been made and entered. By this decree her estate described as consisting of $1688.30, was distributed to her legatees. The decree also contained the words: 'And any other property not now known or discovered, which may belong to the said estate, or in which the said estate may have any interest, be and the same is hereby distributed as follows, etc., etc.' The receipts of the distributees, acknowledging in general terms the receipt of the property of the estate in accordance with the decree, were also in evidence. It is not contended, however, that the legatees did receive the property in this action sued for, or that the executors have ever been discharged. It is insisted, however, that the evidence above mentioned showed that respondents, as executors of the estate of Mary C. Pullan, are not entitled to recover.

"This objection, we think, goes to the legal capacity of the respondents to sue, and should have been taken by the answer in order to avail appellant.

"The cause of action alleged and found was one that belonged to Mary C. Pullan at the time of her death, and upon

her death passed to her estate. The cross-complaint alleged the death of Mary C. Pullan subsequent to the death of Christian Bollinger, and the due appointment and qualification of respondents as the executors of her will, and the issuance to them of letters testamentary, and 'that said letters have not been suspended, revoked or discharged, and that cross-complainants are still the duly qualified and acting executors of the estate of Mary C. Pullan, deceased.' These allegations support the right of respondents to maintain this action for the benefit of the estate. They are not denied, and therefore stand admitted, and no affirmative matter is alleged to countervail the effect of said allegations.

"Under these admitted allegations respondents were entitled to sue to enforce any right belonging to the estate of Mary C. Pullan. The objection not having been taken by demurrer or answer must be deemed to have been waived. (Code Civ. Proc., sec. 434.) The motion for nonsuit on this ground was properly denied.

"In what we have just said, however, we are not to be understood as indicating that the executors may not enforce by suit rights of the estate to property held adversely, after the entry of the decree of distribution but before actual delivery under such decree to the distributees. An examination of the cases cited by appellant to sustain his contention, discloses that in each case the executor had actually delivered the property to heir or legatee. Prior to such delivery it would seem that the executors have the right to possess all the property of the estate as against all the world save the distributees. But in the condition of the pleadings it is not necessary for us to decide the point on this appeal.

"III. We are asked to reverse the judgment for the reason that the terms and beneficiaries of the trust found are not in accordance with the allegations of the cross-complaint.

"It is substantially alleged in the cross-complaint that appellant agreed with and represented to his father, Christian Bollinger, that if he would deed and transfer his property to appellant, he would simply hold the legal title to said property, and that upon the death of said Christian Bollinger he would immediately divide all of said property among the children of said Christian Bollinger, or the representatives of any deceased child, share and share alike, to wit, one fifth of

said property to each child, and make and give good and sufficient deeds of conveyance of the real property, and transfers of the personal property, to each of the said children or their representatives, in the proportions aforesaid.

"The transfers and conveyances to appellant were accordingly made, but appellant, after the death of his father, to · wit, about January 1, 1901, for the first time denied and repudiated the trust.

"The court found that the appellant solicited and urged his father, Christian Bollinger, to transfer his property to him, and that if he would so transfer said property he, said George Y. Bollinger, would manage the same with ability, integrity and honesty, and that he would hold the same in trust upon certain terms and for certain purposes, which are specifically set out in the finding, 'and in the event of the death of Christian Bollinger before the death of Mary A. L. Bollinger, all of said property then remaining in his hands, and all its accumulations then remaining in his hands, under said trust should immediately vest in and become the property of said David A. Bollinger, said Emma Bare, said Elizabeth C. Bare, said Mary C. Pullan and said George Y. Bollinger, an undivided one fifth to each, and that said George Y. Bollinger would in that event execute to said David A. Bollinger, Emma Bare, Elizabeth C. Bare, Mary C. Pullan and George Y. Bollinger, proper conveyances of said property and its said accumulations, vested as aforesaid an undivided one fifth to each.'

"The Mary A. L. Bollinger mentioned in the finding was the wife of Christian Bollinger, and the five other persons mentioned therein are the five children of said Christian.

"In point of fact, as appears by the allegations and admissions of the pleadings, Christian Bollinger did die before his wife Mary A. L. Bollinger. It was only upon the death of Christian Bollinger that Mary C. Pullan would be entitled to any of the property, or to enforce any trust therein under the allegations of the cross-complaint. It is the trust for her benefit alone that is sought to be enforced in this action, and the terms and trusts upon which the property was held prior to the death of Christian Bollinger are and were immaterial to her or her cause of action.

"Upon the death of Christian Bollinger, under the trust as found Mary C. Pullan was entitled to one fifth of the property

then remaining in the hands of the trustee. Under the trust as alleged she was entitled to one fifth of the trust property upon the death of Christian Bollinger. The trust found in her favor is within the terms of the trust as alleged. The finding corresponds in substance with the allegations so far as they affect the rights of Mary C. Pullan, or her estate, against appellant. In other words, the variance between the findings and the allegations are as to matters that do not affect the judgment or the rights of the parties. The legal result as to the respective rights of appellant and respondents is the same in either case. We think the variance immaterial, and one that could not have misled appellant to his prejudice, especially in view of the fact that he denied the existence of any trust, and claimed the property as his own (Code Civ. Proc., sec. 469).

"'Where the variance is not material, as provided in the last section, the court may direct the fact to be found according to the evidence, or may order an immediate amendment.' (Code Civ. Proc., sec. 470.)

"(See, also, *Carter* v. *Rhodes,* 135 Cal. 46, [66 Pac. 985]; *Began* v. *O'Reilly,* 32 Cal. 11; *Davis* v. *Baugh,* 59 Cal. 568; *Herman* v. *Hecht,* 116 Cal. 553, [48 Pac. 611]; *Stockton etc. Works* v. *Glen Falls Ins. Co.,* 121 Cal. 167, [53 Pac. 565]; *Duke* v. *Huntington,* 130 Cal. 272, [62 Pac. 510]; *Foster* v. *Carr,* 135 Cal. 83, [67 Pac. 43].)

"IV. The general objection urged that the evidence in proof of the trust was erroneously admitted is practically disposed of by what we have said upon the preceding point. Some of the evidence tended to prove terms of the trust not alleged, but none thus proved are inconsistent with the trust alleged and found in favor of the children upon the death of Christian Bollinger. Much of the testimony went to general admissions made by George Y. Bollinger, after the death of his father, to the effect that he held the property 'in trust,' and 'in trust for the children,' and the like. All of this was corroborative of the direct evidence given in the deposition of David A. Bollinger tending to prove a trust in favor of Mary C. Pullan as one of the children of Christian Bollinger, which was enforceable by her executors on her death.

"V. It is next urged that the evidence is insufficient to establish any trust, and appellant invokes the rule that to

prove a trust by parol under conveyances absolute in terms, the evidence must be clear, satisfactory and convincing. The rule invoked is amply supported by authority, and is founded in sound reason. But its proper application, where there is substantial evidence to support the existence of a trust, must be left largely to the trial court. As was said in *Harris* v. *Harris,* 136 Cal. 379, [69 Pac. 23] : 'Whether the evidence in any particular case is of this character' (clear, satisfactory and convincing) 'must be determined by the trial court, and its determination thereon will be accepted by this court as conclusive.' (See, also, *Sherman* v. *Sandel,* 106 Cal. 373, [39 Pac. 797].)

"In the case at bar Christian Bollinger was at the date of the transfer 79 years of age, and so illiterate that he could neither read nor write,—not even sign his own name. He had five children, of whom appellant, then 37 years of age, was one. He had on three prior occasions made equal divisions of property among his five children, to the aggregate amount of $57,750. By his will, dated March 12, 1890, he had devised to his wife one half of a block of land, including his dwelling, situate in the town of Santa Clara, and all the rest of his property in equal shares to his five children. H. M. Leonard, then his business agent, and appellant were appointed executors to serve without bonds. By a codicil dated July 26th, 1893, the appointment of Leonard as executor was revoked, and appellant was appointed sole executor to serve without bonds. This will was never revoked. By the transfers now in question, made in March, 1895, Christian Bollinger conveyed to appellant, without consideration, property of the face value of upwards of $45,000, and stripped himself of all he owned save his residence in the town of Santa Clara.

"The facts above set forth conclusively appear from the record.

"There is evidence that prior to the transfer in question appellant had in important transactions acted as his father's agent. He had demanded and obtained for his father, from Leonard, who had theretofore been the agent of his father, the sum of $5000, and kept it for several days, and then paid it over to his father. He had also loaned $8000 for his father, secured by a mortgage of the Quivey Ranch. In this transaction the borrower dealt only with appellant, as agent of Christian Bollinger.

"There is evidence that on the day all the transfers save one were made appellant met his father, Christian Bollinger, and informed him that his wife (who was not the mother of his children) intended to sue him for a divorce, and represented to him that if he would deed to appellant his property, appellant would hold it for him (Christian Bollinger), and on Christian Bollinger's death, deed it to Christian Bollinger's children, one fifth to each, and if Mrs. Bollinger (Christian Bollinger's wife) should die before him to deed it back to him (Christian Bollinger). The above is clearly the effect of the testimony of David Bollinger, although not stated in his exact words. The witness further testified that Christian Bollinger replied 'Very well,' and on the same day went to an attorney's office with appellant, and made all the transfers in question, save one, which was of land, and made about three weeks later.

"While appellant in his answer alleges that he 'has always denied and repudiated any trust whatever concerning any property conveyed or transferred to him by the said Christian Bollinger,' and 'that he now claims title to such of the said property as was conveyed and transferred to him by said Christian Bollinger from the several dates of conveyance and transfer,' he testified that he accounted to his father for large sums collected on the notes transferred, and always gave him money whenever requested so to do. There is evidence of admissions and statements of appellant, made after the death of Christian Bollinger, that he held the property conveyed in trust for his brother and sisters.

"The evidence was sufficient to establish a trust, and the purposes, subject-matter and beneficiaries thereof.

"VI. We now come to the consideration of some rulings made by the court during the trial which were erroneous, and of such a character as to necessitate a new trial. As before stated, the deeds and transfers claimed by respondents to have been made in trust are upon their face absolute. Over the repeated objections and exceptions of appellant, respondents were allowed to prove statements of Christian Bollinger, made after the execution of such deeds and transfers, and not in the presence of appellant, to the effect that such transfers were made in trust, and that appellant held the property in trust. As very clearly appears from a dialogue that took place between the court and counsel for respondents, these

declarations of Christian Bollinger, the grantor, were offered and received as evidence tending to show a trust. In answer to a query from counsel for appellant concerning the scope of the evidence of the declarations of Christian Bollinger, the court said:

" 'I am satisfied . . . you can offer them for the purpose of showing a trust.

" 'Counsel for respondents: Yes, sir.

" 'The Court: That is all you offer them for?

" 'Counsel for respondents: That is what I offer them for, and that is what they are in here for.

" 'The Court: And I shall so receive them.'

"It is well settled that declarations of a grantor, made after the execution of his conveyance, cannot be received to disparage his deed. (Fisher v. Bergson, 49 Cal. 294; Walden v. Purvis, 73 Cal. 518, [15 Pac. 91]; Bury v. Young, 98 Cal. 446, [35 Am. St. Rep. 186, 33 Pac. 338]; Ord v. Ord, 99 Cal. 523, [34 Pac. 83]; Hyde v. Buckner, 108 Cal. 522, [41 Pac. 416]; Smith v. Mason, 122 Cal. 426, [55 Pac. 143].)

"In the case at bar the deeds and conveyances were on their face absolute, and purported to convey an absolute title to appellant. It was his contention that they did convey such title. Respondents, on the other hand, maintained that the conveyances were in trust and did not convey absolute title. This was the primary issue in the case. The declarations of Christian Bollinger were admitted by the court as evidence to disparage his own deed, and this action of the court, under the authorities above cited, necessitates a retrial of this action.

"The court also erred in permitting respondents to prove that David E. Bare, a witness called by respondents, had made statements to the effect that George Y. Bollinger (appellant) had admitted that 'he held the property in trust, and also other statements as to declarations made by Christian Bollinger. The manifest purpose of calling the witness was to prove that he had heard appellant admit that he held the property in trust, and also to prove declarations of Christian Bollinger tending to show confidence in his son, the appellant; but the witness denied that he had heard appellant say anything about the property transferred to him, or that he had heard the declarations attributed to Christian Bollinger. In other words, the witness gave no affirmative testimony, but

simply failed to give expected testimony that would have supported respondents' contention, if it had been given.

"The court, over the objection and exception of appellant, permitted respondents to prove that the witness had made statements to two different witnesses to the effect that he had heard appellant say that he was holding the property in trust for his brother and sisters, and also that he told of the declarations and acts of Christian Bollinger tending to show confidence in his son, the appellant.

"That these rulings were erroneous has been established by a long and consistent line of authorities in this state. *(People* v. *Jacobs,* 49 Cal. 384; *People* v. *De Witt,* 68 Cal. 584, [10 Pac. 212]; *People* v. *Wallace,* 89 Cal. 158, [26 Pac. 650]; *People* v. *Mitchell,* 94 Cal. 550, [29 Pac. 1106]; *Estate of Kennedy,* 104 Cal. 429, [38 Pac. 93]; *Hyde* v. *Buckner,* 108 Cal. 522, [41 Pac. 416]; *People* v. *Conkling,* 111 Cal. 616, [44 Pac. 314]; *People* v. *Crespi,* 115 Cal. 50, [46 Pac. 863]; *People* v. *Godwin,* 123 Cal. 374, [55 Pac. 1059]; *People* v. *Creeks,* 141 Cal. 529, [75 Pac. 101].)

"The contention of respondents that the evidence was admissible under section 2049 of the Code of Civil Procedure is answered by the language used in *People* v. *Creeks,* 141 Cal. 529, [75 Pac. 101]; 'That such testimony is not authorized by the provisions of sections 2049 and 2052 of the Code of Civil Procedure was squarely held in *People* v. *De Witt,* 68 Cal. 584, [20 Pac. 212]. The decisions of this court uniformly hold such testimony objectionable.'

"In *People* v. *Creeks,* 141 Cal. 529, [75 Pac. 101]; and in *Estate of Kennedy,* 104 Cal. 429, [38 Pac. 93], a new trial was ordered solely because of such a ruling as is here complained of.

"For the reasons above noted the judgment and order must be reversed, and it is so ordered.

"Hall, J.

"We concur: Cooper, P. J., Kerrigan, J."

A rehearing of the cause was ordered by this court for the further consideration of the question discussed in subdivision I of the opinion above quoted, and, in particular, of the following matter:

"It is claimed that the two first alleged causes of action are actions that might have been brought by Christian Bollinger in his lifetime, and on his death passed to his estate, while the last two are actions in favor of his children, and in which his estate has no interest, and for this reason that said actions are improperly joined. It is certain that the cross-complaint does contain some allegations pointing to an action in favor of Christian Bollinger's estate; but on the trial of the action the court found against the allegations of the cross-complainant in this regard, and found such facts as support an action to establish and enforce a trust in favor of the children of Christian Bollinger, of whom Mary C. Pullan, respondents' testatrix, was one at the time of his death, and the decree enforces the trust in favor of the respondents as executors of her will only.

"The prayer of the cross-complaint sought only to enforce a trust in one fifth of the property conveyed, as a right that inured to Mary C. Pullen upon the death of Christian Bollinger and the repudiation of the trust by appellant.

"As before stated, the court found against the allegations of the cross-complaint and in favor of the appellant upon the matters tending to support actions in favor of the estate of Christian Bollinger. Under these circumstances we think it clear that appellant could not have been injured by the ruling of the court upon the demurrer, even though such ruling may have been erroneous. Judgment should not be reversed for errors that do not affect the substantial rights of the parties. (Code Civ. Proc., sec. 475; *Reynolds* v. *Lincoln,* 71 Cal. 183, [9 Pac. 176, 12 Pac. 449]; *Angell* v. *Hopkins,* 79 Cal. 181, [21 Pac. 729]; *Hirschfeld* v. *Weill,* 121 Cal. 13, [53 Pac. 402].)"

It is insisted by appellant that, at least, two causes of action, which by no possibility may be joined in the same complaint, were in this complaint improperly joined; that a demurrer was directed to this defect in the pleading and that it should have been sustained. The first of these causes of action charges that George Y. Bollinger obtained the property from his father by the exercise of undue influence and fraud upon him. This cause of action, the father being dead, is a cause of action to the prosecution of which the deceased's personal representatives succeed, and the recovery would be on behalf of the estate, its heirs, and devisees. The second distinct cause of

action charges that George Y. Bollinger received title to the property under an express trust for the benefit (with others) of Mary C. Pullan. This cause of action charges, not upon the ground of fraud or undue influence, but upon the express trust deliberately entered into and subsequently repudiated by the trustee. A favorable judgment under this cause of action would not be for the benefit of the estate of Christian Bollinger, deceased, but for the benefit of the *cestuis que trust*. That this position of appellant is sound may not be gainsaid. Indeed, it is conceded in the opinion of the learned judge of the court of appeal. He concludes the error to be without injury because the court actually found against the cause of action sounding in fraud, and in favor of the cause of action to declare the trust, and, this being so, he concludes that the error of the trial court was without injury to appellant. Such would, indeed, be the case, and the view of the court of appeal upon the matter would be perfectly sound if the ultimate outcome of the litigation had been an affirmance instead of a reversal. But, for the reasons expressed in the opinion (with which reasons we are in full accord), the judgment and order appealed from were reversed and the cause remanded for a new trial. It may not be foretold what new evidence may be presented upon the new trial, and it may not be said that no injury will be worked to appellant if, upon this new trial, he is called upon to defend against two causes of action thus admittedly improperly joined. It follows, therefore, that the demurrer should have been sustained.

In all other respects the opinion and conclusion of the court of appeal is hereby adopted and affirmed. As to the demurrer, it is ordered that the cause be reversed, with directions to the trial court to sustain the demurrer, with leave to the pleader to amend and elect upon which cause of action he will stand.

The judgment and order are reversed and the cause remanded for proceedings in conformity with the foregoing.

Shaw, J., Sloss, J., Lorigan, J., and Angellotti, J., concurred.