[Civ. No. 5203. First Appellate District, Division One.—July 30, 1926.]

## LUCY E. W. MURRAY, Respondent, v. GUARANTEE TRUST & SAVINGS BANK (a Corporation), as Executor, etc., et al., Appellants.

[1] QUIETING TITLE — LOST INSTRUMENTS — EVIDENCE.—In this action by a widow against the executor of the estate of her deceased husband and others to quiet title to certain parcels of real property, it is held that the evidence was sufficient to sustain the findings that deceased executed a deed to his wife, that the deed was lost, and that she was the owner of the properties conveyed thereby.

[2] EXECUTORS AND ADMINISTRATORS — FAMILY ALLOWANCE. — That a widow has sufficient property of her own does not affect her right to such an allowance as is reasonably necessary for her support.

[3] ID. — MISSTATEMENTS IN PETITION FOR FAMILY ALLOWANCE — ACTION TO QUIET TITLE—EVIDENCE—ESTOPPEL.—In this action by a widow against the executor of the estate of her deceased husband and others to quiet title to certain real property, the evidence was sufficient to sustain the finding that the widow, notwithstanding misstatements made in her petition for family allowance that she had no property of her own other than the property not in dispute, was not estopped to claim title to properties conveyed to her by her deceased husband, where it was not shown that the executor or defendants were misled to their injury or suffered detriment other than the reduction of the estate by the amount of the allowance.

[4] EQUITY — LACHES — DISCRETION. — The defense of laches involves the determination of a question which, in the first instance, is addressed to the sound discretion of the trial court.

[5] QUIETING TITLE—EXECUTORS AND ADMINISTRATORS—SUBDIVISION 3, SECTION 1880, CODE OF CIVIL PROCEDURE—WITNESSES.—Subdivision 3 of section 1880 of the Code of Civil Procedure, making incompetent as witnesses parties to an action against an executor on a demand against the estate as to any matter occurring before the death of the deceased, does not apply to actions to

2.  See 11 Cal. Jur. 499.

4.  See 10 Cal. Jur. 522; 10 R. C. L. 399.

5.  What constitutes claim or demand against estate within statute disqualifying witness, see note in 41 A. L. R. 1044. See, also, 11 Cal. Jur. 820.

quiet title to real property brought by the surviving spouse against the estate.

[6] ID. — LOST INSTRUMENTS — EVIDENCE. — In an action by a widow against the executor of the estate of her deceased husband and others to quiet title to certain real property, claimed by her under a deed executed by her husband in his lifetime and which subsequently was lost, where plaintiff testified with sufficient certainty that the lost instrument was a grant, bargain, and sale deed, and as to its contents, it was not prejudicial error to admit plaintiff's testimony that the printed portion of the lost instrument was the same as that of a grant deed shown her.

[7] LOST INSTRUMENTS — PROOF OF CONTENTS — EVIDENCE — APPEAL. — In order to establish the execution and contents of a lost instrument it is necessary that the evidence be clear, satisfactory, and convincing; but whether the evidence in any particular case is of that character must be left largely to the trial court, and where there is substantial evidence supporting its finding thereon, its determination must be accepted as conclusive on appeal.

---

(1) 38 C. J., p. 260, n. 35, 39.   (2) 24 C. J., p. 254, n. 79.   (3) 24 C. J., p. 266, n. 87.   (4) 21 C. J., p. 218, n. 3, p. 237, n. 11. (5) 40 Cyc., p. 2303, n. 22.   (6) 4 C. J., p. 974, n. 82.   (7) 38 C. J., p. 259, n. 24.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Walton J. Wood, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Leo V. Youngworth, Harry J. McClean, Arthur W. Eckman and Jerry H. Powell for Appellants.

LeRoy M. Edwards and O. C. Sattinger for Respondent.

CASHIN, J.—An action by respondent Lucy E. W. Murray, the surviving wife of John E. Murray, to establish her claim to certain real property.

The complaint, which consists of two counts, alleges a cause of action to quiet title and the execution by John E. Murray of a deed conveying the property to respondent, and the loss of the deed.   Appellants Emmet Y. Murray and Jane Doe Murray, his wife, were joined as defendants with Guarantee Trust & Savings Bank, a corporation, as

---

7.   See 16 Cal. Jur. 703.

executor of the last will and testament of John E. Murray, deceased, and Security Trust & Savings Bank, a corporation, the successor to the business of the corporation first named. Judgment was entered for respondent, quieting her title to two of the parcels of real property which are hereinafter described, together with a personal judgment against the corporations named for the amounts received by the latter as the income therefrom. The defendants Murray have appealed, the appeal being presented on the judgment-roll and a bill of exceptions.

Appellants urge as grounds for reversal rulings of the trial court in admitting evidence over objection, an insufficiency of the evidence to sustain the findings, laches on the part of respondent, and that the latter is estopped by her conduct from maintaining the action.

Respondent and John E. Murray intermarried on September 8, 1910, and the latter died testate on August 2, 1919, leaving surviving him the respondent and Emmet Y. Murray, his son, the latter being the issue of a previous marriage. The action involves the title of three parcels of real property situate in the county of Los Angeles, described as an undivided one-half interest in lots 10 and 11, block 33 of West End University Addition; lots 22 and 23, subdivision of lot 1 of block 37 in Hancock's Survey, and lots 4 and 5, block 22, and lot 4, block 25, in Alamitos Bay tract. The parcels described were known to the parties and referred to in the proceedings as the "Westmoreland," "Murray Apartment," and the "Alamitos" properties respectively.

The complaint alleged that John E. Murray on or about July 16, 1915, executed to respondent a grant, bargain, and sale deed to the parcels mentioned and that the deed (which was not recorded) was subsequently lost. The court found these allegations to be true, and further found respondent to be the owner of the Murray Apartment and Alamitos properties, and that defendants and the estate of the deceased had no right, title, or interest therein. It was also found that respondent was without title to the Westmoreland property, the finding stating that "the court makes no finding as to who is the owner to said property." The court further found against defendants' special defenses, which included the allegations of laches on the part of respondent,

and that she by her conduct was estopped to claim title to the property.

The record shows that the proposed marriage between respondent and John E. Murray caused friction between the latter and his son, to allay which the father shortly before the event agreed in writing to convey to his son portions of his property, the latter agreeing as provided therein "to let his father alone and allow him to pursue his own plans of life without annoyance or molestation and to endeavor to be pleasant, agreeable and harmonious in every respect"; and it further appears that the relations between the respondent and the son were never cordial; that pursuant to the agreement a deed dated August 12, 1911, was executed by Murray to his son, conveying an undivided one-half interest in and to the Westmoreland property, this deed being followed by a second dated June 17, 1914, likewise conveying an undivided one-half interest therein. According to the testimony respondent was not apprised of the latter conveyance until after the execution of the deed here in question. It was shown that at the time of the execution of the second deed mentioned above appellant Murray was the owner of an undivided one-half interest in the Murray Apartment property. This interest was acquired by the deceased about the date of the deed last mentioned and the apartments were subsequently erected on the property.

[1] The evidence adduced in support of respondent's claim consisted of her testimony, that of Amy Wheeler, her sister, and a notary public. Respondent and the notary testified that on the date alleged a conveyance, in form a grant, bargain, and sale deed, of the three parcels mentioned was signed by deceased, acknowledged before the notary public and, in the presence of the latter, delivered to respondent. Respondent testified that the deed was not recorded, but was inclosed in an envelope, upon which was indorsed the name of respondent with a note thereon of its contents; that she, accompanied by her husband, then visited the Commercial National Bank of Los Angeles and placed it in a safe deposit box to which both had access; that following the death of Murray it was found that the envelope with the deed had been removed therefrom. These witnesses, both of whom were familiar with documents of this character, testified with sufficient certainty to the contents of the instrument.

According to the testimony of Amy Wheeler, the deceased, subsequent to the date of the alleged deed, stated to her that a conveyance of the property had been made to respondent. Respondent further testified that her husband did not request that the deed be withheld from record, and stated that her reasons for not recording it were as follows: "I was afraid that if I recorded that deed it might hurt Mr. Murray's credit. Mr. Murray and I were very much involved in debt; Mr. Murray had very good friends who had extended large credit to him, and I was afraid that if these people knew that Mr. Murray had deeded his property to me that, not knowing the circumstances, might not be willing to continue giving him credit. It was entirely my own idea not to record it." The deceased on two occasions following the dates of the alleged conveyance to his wife and the conveyances to his son included the properties described therein in lists of his assets furnished the Commercial National Bank for the purpose of obtaining credit. After his death the executor in the course of administration collected the rents from the apartment house and, with the approval of respondent, let the property for a term although respondent, as testified by an officer of the executor corporation, on more than one occasion made claim of ownership of the property; and the court found in this connection that the executor at all times was aware of respondent's claim thereto. Before the instant action was commenced respondent obtained an order for the payment of a family allowance from the estate in the sum of $350 per month. In her petition therefor it was alleged that the property of the estate consisted almost wholly of an apartment house and its furnishings; that petitioner had no property of her own, either real or personal, other than a parcel of land (which is not involved in this action) and the proceeds of an insurance policy paid after the death of her husband. Respondent testified that the petition was prepared and submitted for her signature by her attorney at a time when she was suffering from an attack of typhoid fever; that she read the document, but that in signing it she understood from the fact that the record title stood in the deceased that until she could bring suit to prove her claim "the property would be handled by the administrator." Respondent's testimony that her husband had access to the safe deposit box was

corroborated by an employee of the depositary; and it appears from that of a witness who occupied a portion of the office maintained by the deceased that on the morning following the death of the latter appellant Murray took from the office desk of his father certain papers the character of which was unknown to the witness.

The evidence adduced in support of the allegations of the execution and loss of the deed was believed by the trial court; and while the failure to place the deed of record, together with the statements by respondent in the petition for a family allowance, were facts from which inferences favorable to appellants' contentions might have been drawn, respondent's explanation of her reasons therefor satisfied the court; and we cannot say that its conclusions do not find substantial support in the evidence.

It is urged by appellants that the statements in the petition mentioned and the acceptance of the family allowance estop respondent from asserting a claim to the property.

[2] The law is well settled that the fact that a widow has sufficient property of her own does not affect her right to such an allowance as is reasonably necessary for her support (*Estate of Lux,* 114 Cal. 73 [45 Pac. 1023]; *Estate of Bump,* 152 Cal. 274 [92 Pac. 643]; *Estate of Cowell,* 164 Cal. 636 [130 Pac. 209]; *Estate of Finch,* 173 Cal. 462 [160 Pac. 556]).

[3] The value of the estate, excluding the property involved in this action and including the furniture in the Murray Apartments, the title to which appears to be in dispute, was about $18,000, in addition to which the executor in the course of administration received as income from the personal property the sum of approximately $10,000. Had respondent's claim been then established the fact would not have precluded the making of a suitable allowance, and it is not contended that the sum allowed exceeded that reasonably necessary for her support. As shown, the executor was then in possession and collecting the income with knowledge, as found, of respondent's claim. The explanation by the latter of the apparent misstatement in the petition, in view of these circumstances, as stated, satisfied the trial court; and it not being shown that the executor or appellants were misled to their injury or suffered detriment other than to the extent that the value of the estate was reduced by

the payment of the allowance, the conclusion of the court, which is one of fact (*Di Nola* v. *Allison,* 143 Cal. 106 [101 Am. St. Rep. 84, 65 L. R. A. 419, 76 Pac. 976]; *Parke* v. *Franciscus,* 194 Cal. 284 [228 Pac. 435]), that respondent was not estopped is fairly sustained by the evidence.

[4] The finding against the defense of laches involves the determination of a question which in the first instance is addressed to the sound discretion of the trial court. In view of the circumstances shown it cannot be said that the delay was of such duration as to render inequitable an inquiry as to the validity of the respondent's claim, and the conclusions of the court find support from the evidence (*Akley* v. *Bassett,* 189 Cal. 625 [209 Pac. 576]; *Kleinclaus* v. *Dutard,* 147 Cal. 245 [81 Pac. 516]; *Suhr et al.* v. *Lauterbach,* 164 Cal. 591 [130 Pac. 2]).

[5] Appellants contend that as to matters which occurred before the death of her husband respondent was not a competent witness, and that the court erred in permitting her to testify to facts in connection with the execution of the deed and in admitting her testimony that the printed portion thereof was the same as that of a grant deed shown the witness which had been admitted in evidence for another purpose. That the provisions of subdivision 3 of section 1880 of the Code of Civil Procedure have no application to actions by a surviving husband or wife to quiet the title of real property against the estate of a deceased spouse is a rule established by numerous decisions (*Booth* v. *Pendola,* 88 Cal. 36 [23 Pac. 200, 25 Pac. 1101]; *Poulson* v. *Stanley,* 122 Cal. 655 [68 Am. St. Rep. 73, 55 Pac. 605]; *Bollinger* v. *Wright,* 143 Cal. 292 [76 Pac. 1108]; *Maguire* v. *Cunningham,* 64 Cal. App. 536 [222 Pac. 838]); and in the instant case the personal judgment entered against the executor was based so far as shown on the record and facts proved by the accounts kept by the latter and the testimony of its employees.

[6] Respondent testified that the lost instrument was a grant, bargain, and sale deed, and stated its contents with sufficient certainty. The apparent purpose of the question referring to the instrument shown the witness was to further refresh her recollection as to the character of the deed in question. Such testimony was impliedly held to be admissible in *Kenniff* v. *Caulfield,* 140 Cal. 34, 43 [73 Pac. 803];

and its admission, if erroneous, was not, in view of respondent's previous testimony, prejudicial.

[7] It is the rule that in order to establish the execution and contents of a lost instrument it is necessary that the evidence be clear, satisfactory, and convincing; but, as in actions to prove a trust by parol, whether the evidence in any particular case is of that character must be left largely to the trial court; and where there is substantial evidence supporting its finding its determination thereon must be accepted as conclusive on appeal (*Sherman* v. *Sandell,* 106 Cal. 373 [39 Pac. 797]; *Harris* v. *Harris,* 136 Cal. 379 [69 Pac. 23]; *Bollinger* v. *Bollinger,* 154 Cal. 695 [99 Pac. 196]).

It is our conclusion that the evidence was sufficient to support the findings, and no prejudicial error being shown, the judgment is affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 27, 1926.