[Civ. No. 841.   Fourth Appellate District.—March 13, 1933.]

NEWTON   G.   COHN   et al., Appellants,   v.   BERTHA COHN et al., Respondents.

Joseph A. Brown, Joseph T. O'Connor, Thomas R. White, Milton Choynski and Norman A. Eisner for Appellants.

H. Scott Jacobs and John G. Covert for Respondents.

BARNARD, P. J.—This action was brought by certain heirs and devisees of Charles Cohn, deceased, for the purpose of establishing a trust as to some 2,200 acres of land situated in the Tulare Lake bed in Kings County, which land had been conveyed by Charles Cohn in his lifetime to his brother, Levi Cohn. Plaintiffs contend that in fact this land was conveyed to Levi Cohn in trust for Charles Cohn or for him and his heirs. Charles Cohn conveyed the land in question to Levi Cohn by grant deed dated May 24, 1918, and recorded May 27, 1918. The deed recites a consideration of "Ten Dollars and other good and valuable consideration to him in hand paid," and $8 U. S. documentary stamps were affixed thereto and canceled. On June 6, 1918, Charles Cohn, as attorney-in-fact of Irving Cohn, executed another deed conveying the same land to Levi Cohn in consideration of $10 and other good and valuable consideration, which deed recited: "This deed is given for the purpose of correcting a deed dated the 24th day of May, 1918, and recorded in Book 65 of Deeds at page 493." It is conceded that at the

times these deeds were executed the land in question was the property of Charles Cohn, and that Irving Cohn held the legal title in trust for Charles, who held Irving's power of attorney. Charles Cohn died on June 22, 1926. The defendant Bertha Cohn is the widow of Levi Cohn who, before his death, had conveyed the land to her. Bertha Cohn filed a cross-complaint asking that title to the land be quieted in her. After a trial the court found, on all disputed issues, in favor of Bertha Cohn and from a judgment quieting her title this appeal is taken.

The main contention of appellants is that the evidence does not support the judgment, but is in all respects contrary thereto. It is contended that the first deed of May 24, 1918, is void for the reason that the legal title then stood in the name of Irving Cohn and that title was conveyed to Levi Cohn only by the second deed dated June 6, 1918. It is then contended that it conclusively appears that the land was conveyed in trust to Levi Cohn by the second deed, because Charles Cohn then held a power of attorney executed by Levi Cohn and because the effect of this deed is disclosed and controlled by a certain letter written by Charles Cohn on May 29, 1918, five days after the execution of the first deed and eight days before the execution of the second deed. This letter begins "Dear Bro Levi and sister Edith", but was mailed to the sister, Edith Fisher, who lived at San Anselmo, while Levi lived in Butte County. This letter, after stating that the writer owed $1,000 to Levi, Edith and three other relatives, refers to the war, complains of the actions of several members of the family, and then continues:

"I have lost much as atty. in fact of Irving Cohn, deeded deed not yet returned to me by Kings Co. Recorder. All said Lake lands 2000 and odd hundred acres to L. Cohn, & my sole object as stated to protect you all beyond question of doubt and only I didnt deed to all of you instead of Levi it would be to complicated for me to handle, but while standing in Levi's name I hold his power of atty, and at all times can give it my prompt attention as if it stood in my own name, and in case of emergency he will protect you all, as your interests may appear. Very simple as you hold my notes and he will treat besides the 2000 acres all fair as himself. I hold patented lands in Tulare Lake for

some 4000 more acres will get some crop this year. Most is under water—but in case of one favorable year on all the land just 1 crop will give you a fortune if 1 or 2 more dry seasons we will catch it.

"Say nothing to any body about this matter and Levi dont let Mr. D. S. Cohn messmerize you to not deed any 1 inch of this land. Consult me. Love to all retain this for reference. C. Cohn. P. S. I will probably w-want to deed my other 4000 acres to you also other lands and properties. All I .want is the satisfaction of handling and management during my life and my normal faculties will permitt, but we must be just towards all and fair. Levi is getting along in age and is married. Hence Edith you and Levi not known to any one what you deem is best and less expensive and simplest form to formulate plan with justice and equity to all in conformity to justice and deserving and submit to me all I ask is little plain food and clothes while I exist. Love to all.

"C. COHN."

It appears that after the death of Charles Cohn there was found among his papers a power of attorney to him executed by Levi Cohn, given and recorded in 1897, and the court found that this was given in connection with other lands not involved here.

■ It may well be questioned whether this letter of May 29, 1918, relied upon by appellants as conclusively establishing a trust, would be sufficient for that purpose had no evidence been introduced by the respondents. The deeds conveying the property to Levi Cohn were absolute in form, recited a consideration and, in face of the presumption arising therefrom, a trust could only be established by clear and convincing evidence (*Sherman* v. *Sandell*, 106 Cal. 373 [39 Pac. 797]; *Woodside* v. *Hewel*, 109 Cal. 481 [42 Pac. 152]). The letter in question is vague and indefinite. While it contains certain expressions indicating that the writer intended to give the land further attention or to exercise some control over the same, it contains other expressions indicating that the writer had conveyed the land absolutely. Neither the beneficiaries, the purposes nor the conditions of any trust are set forth clearly or at all.

■ It cannot be said that the first deed was of no effect as, in any event, Irving Cohn was at that time holding the

legal title to the land in trust for Charles Cohn, who had the right to convey his interest therein. (25 Cal. Jur. 323; *Wright & Kimbrough* v. *Carly*, 11 Cal. App. 325 [104 Pac. 1009].) The second deed was corrective only, conveying the legal title, but the first deed had conveyed all of Charles' interest in the land, leaving only the naked title in Irving, as before. The letter was not written at the same time either of the deeds were executed and, in fact, was written five days after Charles Cohn had parted with all his interest in the land, and after the deed had been recorded. It further appears that the letter was mailed to the sister, Edith Fisher, was produced by her at the time her deposition was taken in this case, and the record is absolutely devoid of any evidence that the letter was ever shown to or called to the attention of Levi Cohn.

In addition to the presumption arising from the deeds, the record contains other evidence supporting the findings of the trial court. While appellants produced a number of witnesses who testified that Levi Cohn had at various times made statements to the general effect that he held this land in trust, the deposition of Levi Cohn was introduced in which he denied all these conversations and having made any such statements, and in which he not only denied any trust relationship but testified to facts inconsistent therewith. He also testified that in 1919 or 1920 Charles said to him: "I have made you a landowner of a valuable land," and that in April or May of 1926, Charles again said to him: "Don't sell, barter or trade that lake land; it is a very valuable piece of property." Bertha Cohn testified that her husband Levi paid the taxes on this property during his lifetime and that she paid the taxes after his death. On September 3, 1919, Charles Cohn wrote to his sister Edith Fisher and, referring to Levi Cohn, said: "I deed to this ingrate with no strings a independent fortune." It may here be observed that in all of his letters Charles Cohn was in the habit of referring to his relatives in terms not too complimentary. For example, at one time he wrote to his sister Edith as follows:

"The entire family with rare exceptions are the most ignorant, idotic vicious unappreciative, degenerate ungrateful corrupt brainless vampires abortions petty larceny thieves bandits on the face of this earth."

At another time he wrote: "God owes me a great grudge, so many idiots and embecels in one family." On February 3, 1919, Charles wrote to Levi: "Please send me check act your land taxes Kings County," and then after referring to this land giving the amount of taxes he said: "In future you inform Kings Co. assessor send you blank statement direct and you can fill in and advise him to assess it to you direct." On February 26, 1920, Charles wrote to Levi in reference to a division of the crops produced on this land and on other lake lands owned by Charles, insisting that Levi make out a separate income tax report covering the proceeds of the land conveyed to him. Mrs. Bertha Cohn testified that Charles said to Levi in her presence in March, 1920, in reference to some work Levi had done for Charles: "Well, you'll never regret it. I made you a rich man. . . . I deeded that lake land to you for you and your babies, and it will make you a rich man some day." The record contains sufficient evidence to sustain the findings complained of, and the matters referred to by appellants, at best, merely disclose some conflict.

The only other point raised is that the court erred in admitting certain evidence. It is first urged that the letters written by Charles and certain oral testimony of statements made by him after the delivery of the deeds, tending to show that he had conveyed the land absolutely, were not admissible, it being argued that the acts and declarations of a grantor, after the delivery of a deed, may not be received either to impeach it or to sustain it. Appellants cite the following cases: *Northern California Conference Assn.* v. *Smith,* 209 Cal. 26 [285 Pac. 314]; *Gallagher* v. *Gallagher,* 98 Cal. App. 180 [276 Pac. 634]; *Bollinger* v. *Bollinger,* 154 Cal. 695 [99 Pac. 196]; *Emmons* v. *Barton,* 109 Cal. 662 [42 Pac. 303]; *Mowry* v. *Heney,* 86 Cal. 471 [25 Pac. 17]; *Yordi* v. *Yordi,* 6 Cal. App. 20 [91 Pac. 348]. While these cases sustain the rule that such acts and declarations may not be received to impeach a deed, they contain nothing to sustain the proposition that they may not be received to sustain the deed and we are cited to no cases setting forth such a rule. One of the principal contentions made throughout this action is that Charles Cohn conveyed this land to Levi Cohn to be held in trust for himself. Upon this issue at least the evidence here attacked was ad-

missible under sections 1853 and 1870 of the Code of Civil Procedure. A further consideration is that even if all such evidence should be disregarded there would remain evidence sufficient to sustain the findings attacked.

Appellants also attack as inadmissible certain evidence given by an attorney who drew the last will of Charles Cohn. It is urged that statements made to this attorney by Charles Cohn in giving instructions for the preparation of his will were privileged. Not only would it appear that this contention is without merit (*Estate of Nelson*, 132 Cal. 182 [64 Pac. 294]; *Estate of Dominici*, 151 Cal. 181 [90 Pac. 448]), but the record contains ample evidence that the statements objected to were made in the presence of a third person (*Sharon* v. *Sharon*, 79 Cal. 633 [22 Pac. 26, 131]).

By his will, Charles Cohn disposed of an estate of approximately $1,000,000, giving approximately 80 per cent thereof to Levi Cohn. It appears that some settlement was agreed upon between Levi Cohn and the other heirs, under which the other heirs were to receive 55 per cent of the entire estate and Levi was to retain 45 per cent thereof. We are asked to pass upon certain matters which might be involved in the final settlement of the estate in connection with this compromise, but these have no possible connection with the matter now before us and cannot be here decided.

The burden of proof throughout this action was upon the appellants. There is ample evidence, the admissibility of which is beyond question, to sustain the findings made, and under section 4½ of article VI of the Constitution, any possible errors in the admission of evidence cannot be held sufficient to warrant a reversal.

The judgment appealed from is affirmed.

Marks, J., and Jennings, J., concurred.