[S. F. No. 15597. In Bank.—November 16, 1936.]

GRACE H. CHARD, Administratrix, etc., Respondent, v.
DANIEL F. O'CONNELL, Appellant.

664

 

John S. De Lancey for Appellant.

Gillogley, Crofton & Payne, Francis N. Foley, Abraham Glicksberg and Walter C. Frame for Respondent.

EDMONDS, J., *pro tem.*—The judgment from which the defendant Daniel F. O'Connell appeals was rendered in an action brought against him by his sister, for a share in money alleged to have been received by him in trust.

According to the allegations of the complaint the defendant received the sum of $28,000 from his mother, Mary J. O'Connell, in trust, to be held by him during the lifetime of his mother and thereafter to be divided between her five children. The trial court found that defendant received the money under an assignment made by Mrs. O'Connell of her interest in the estate of her deceased brother; that the defendant at the time the assignment was executed represented to his mother that he would hold the proceeds of the settlement in trust as alleged by the plaintiff and that he thereafter repudiated the trust.

There is no dispute concerning the facts in connection with the source of the money. The brother of Mrs. O'Connell died in California, leaving a will which was admitted to probate. Mrs. O'Connell had no property and prior to the death of her brother she was supported by him and the defendant. The defendant was one of five children. He, it seems to be conceded, was the only one of Mrs. O'Connell's children who had assumed any responsibility for her support. She had made her home with him for a number of years but at the time of the death of her brother she was living with May Worley, her daughter.

After the death of his uncle the defendant went east on two occasions and made some investigation of his affairs. Concluding that his mother had not received her just share under his uncle's will, the defendant decided to contest it on her behalf. Unquestionably, Mrs. O'Connell had nothing

to do with this decision. She was a woman 85 years of age who could neither read nor write. She was confined to her home and apparently relied entirely upon her son Daniel for advice and direction. According to his testimony he told her he "was going to take a chance and gamble and spend a little money and make a contest", and she replied, "Well, I hope you don't lose. I hope you win, because you are the only one who has ever done anything for me, and I hope you get something."

As a result of the contest initiated in the name of Mrs. O'Connell a settlement was reached by which she was to receive a share of the estate. This settlement was evidenced by an agreement between her and other heirs in the estate, which she executed in February, 1926. A month later Mrs. O'Connell assigned this agreement to her son, who about a year thereafter collected the money. After paying inheritance taxes and attorneys' fees approximately $28,000 remained, which defendant received and deposited in a bank to his own credit.

The complaint alleges that "Mary J. O'Connell was of great age and impaired mentally and physically" and that "in all matters connected with the said contest and the settlement thereof . . . the said Daniel F. O'Connell acted as the confidential agent and trusted representative of his mother". However, plaintiff does not seek to set aside the assignment upon the ground of fraud. She claims one-fifth of the money received by the defendant upon the theory that it constitutes a trust fund. The complaint alleges: "That at the time of making said assignment and at the time of the receipt of said money as aforesaid, the said Daniel F. O'Connell represented to his said mother that he would hold the proceeds of said settlement in trust during the lifetime of said mother and thereafter divide the same equally between the children of the said mother, to-wit, the plaintiff and the defendants above named."

Under the issues as thus framed the only question presented is whether Daniel F. O'Connell received the money impressed with the trust conditions.

In the case of *Lefrooth* v. *Prentice*, 202 Cal. 215, 227, 228 [259 Pac. 947], this court said: "It is a cardinal rule that trusts in personalty may be created, declared, or admitted verbally and may be proved by parol evidence, but the

authorities are uniform to the effect that such evidence must at all times be clear ,and unequivocal. (*Silvey* v. *Hodgdon,* 52 Cal. 363; *Sheehan* v. *Sullivan,* 126 Cal. 189 [58 Pac. 543]; *Barker* v. *Hurley,* 132 Cal. 21 [63 Pac. 1071, 64 Pac. 480].) Mr. Pomeroy, in Equity Jurisprudence (fourth edition), section 1009, states the rule as follows: 'The declaration of trust, whether written or oral, must be reasonably certain in its material terms; and this requisite of certainty includes the subject-matter or property embraced within the trust, the beneficiaries or persons in whose behalf it is created, the nature and quantity of interests which they are to have, and the manner in which the trust is to be performed. If the language is so vague, general, or equivocal that any of these necessary elements of the trust is left in real uncertainty, then the trust must fail.' ''

Applying this rule to the evidence in the case at bar, we do not find the position of the plaintiff supported by any evidence whatever. The only evidence which even remotely touches the issues before us is the testimony of Ida O'Connell, the widow of a son of Mary J. O'Connell, and that of Ed. O'Connell, her grandson. The former testified that the subject of the money expected from the will contest was a frequent topic of conversation at the home of May Worley, a daughter of Mrs. O'Connell with whom she was residing. Concerning what was said she stated: ''A. Well, the conversation we generally had, or that was carried on, was never before Mrs. O'Connell, it was always between the—my husband and his sister and brother, but the brother was seldom there, and at the time of the suit, when the suit was first on, why then the conversation was about Dan going to get the money, that he thought that he would get that money, he told his mother he would get the money for his brothers and sisters, he didn't need it himself, and he didn't want a cent of it; and after the money was received, why they figured out that there was about $8000 coming to each one of them.'' When asked who was present and what was said and done, she stated: ''Well, as near as I can remember my husband and his sister and myself . . . Dan was never present . . . Well, they talked over the suit, and then they talked over the money later.''

In this testimony the witness specifically stated that the conversations were "never before Mrs. O'Connell" and "Dan was never present." Clearly there is nothing in them which could bind this defendant.

■ The other witness related a conversation which he said occurred in December, 1926, at which he, Mary J. O'Connell, Michael J. O'Connell, one of her sons and the father of the witness, Mrs. Worley and the defendant were present. He said: "My grandmother at that time they were talking about this money, and she mentioned that her children had never had anything, and she hoped that they would get enough out of it to take care of them, she hoped that they would get the money before—or while she was still living, to enjoy it."

The time of this conversation as fixed by the witness places it after the execution of both the agreement for settlement and the assignment and before the payment of the money. According to the undisputed evidence the assignment had been delivered to the defendant nine months before. The statements of Mrs. O'Connell made after the execution and delivery of the assignment could not bind the defendant (*Bollinger* v. *Bollinger*, 154 Cal. 695 [99 Pac. 196]). Furthermore her declarations do not support the terms and conditions of a trust under which the defendant was to hold the money during the lifetime of his mother and upon her death divide it between her children. Mrs. O'Connell's statement, as testified to by her grandson, was that "she hoped that they would get the money . . . while she was still living, to enjoy it".

■ Respondent lays great stress upon the fact that the defendant, immediately after he received the money, gave $4,000 to a sister and to each of two brothers. The defendant's answer to this is that the money was a gift to him from his mother; that he has always claimed it as his own, and that he had the right to give it away in such amounts and to such persons as he chose. According to the defendant the gift was made to him because he had cared for his mother during many years and had advanced the expenses of the investigation which disclosed the facts upon which the successful contest was based.

It is significant in this connection that $4,000 is not one-fifth of the amount the defendant received; also that each of

the three persons to whom he paid $4,000 knew the amount which had been received by him through the settlement and no one of the three made any demand for one-fifth of the fund. Moreover, the terms of the trust sought to be established by the respondent required distribution of the money upon the death of the mother; not immediately after its receipt by the defendant.

Respondent relies upon the rule stated in *Title Insurance & Trust Co.* v. *Ingersoll,* 158 Cal. 474 [111 Pac. 360], that to establish a parol trust, the evidence need not be entirely clear and convincing to an appellate court and that the determination of the trial court on the question is conclusive. But to secure the benefit of that rule there must be some evidence tending to establish the trust. In the present case there is no evidence whatever to support the findings of the trial court "that at the time of making said assignment at the time of the receipt of said money as aforesaid, the said Daniel F. O'Connell represented to his said mother that he would hold the proceeds of said settlement in trust and divide the same equally between the children of the said mother, to wit: Anna Wulff, deceased, and the defendants above named, and the proceeds of said settlement were assigned to said Daniel F. O'Connell by the said Mary J. O'Connell to be held in trust for the use and benefit of Anna Wulff deceased, and defendants above named. . . . " Cases such as *Campbell* v. *Genshlea,* 180 Cal. 213 [180 Pac. 336], where an action is brought to set aside a deed or recover property alleged to have been secured by fraud or undue influence, present an essentially different issue than is found in the case at bar.

The judgment is reversed.

Curtis, J., Waste, C. J., Shenk, J., Thompson, J., Seawell, J., and Langdon, J., concurred.

Rehearing denied.