[Civ. No. 13666.    Second Dist., Div. Two.    Oct. 28, 1942.]

EMMA MILLER, Appellant, v. AGNES MILLER et al., Respondents.

Willcox & Judson and Rupert B. Turnbull for Appellant.

John C. Mead and Fred W. Heatherly for Respondents.

MOORE, P. J.—Appellant commenced this action to declare a trust and to determine adverse interests in certain real properties. Upon all material issues the findings of the court were against her contentions. She brings this appeal to test the merit of the judgment pronounced thereon.

The assignments of error are as follows: (1) the findings of fact have no substantial support in the evidence; (2) the decision is not supported by the findings and is against the law.

Plaintiff is a daughter of decedent Robert Miller by a former marriage. Respondent Agnes Miller is' his surviving wife and Louise is his daughter by Agnes. For the sake of brevity they will be referred to by their first names.

After 1885 Robert was married to the mother of Emma. About 1907 he was married to Agnes. Prior to his first marriage he engaged in the curled hair business on Avenue 20 in Los Angeles and continued in the operation of that business until his decease October 3, 1935. Subsequent to his marriage to Agnes, they accumulated a large amount of property including the properties involved in this action. In December, 1932, he incorporated the Robert Miller, Inc. which managed all properties until Robert's decease, and transacted all business theretofore done by him. He caused all of its capital stock to be issued to himself and thereafter

transferred two shares to qualify Agnes and Louise as directors.

In 1930 Robert became involved in litigation with one Rosenfeld. This action resulted in a judgment against Robert in the sum of $16,968. On April 12, 1932, appeal was taken to the Supreme Court. To stay execution a supersedeas bond was executed by two sureties who failed to justify on July 18, 1932. Twenty-six days later execution was issued and levied upon the property on Avenue 20. Five days later the Chief Justice granted a writ of supersedeas requiring Robert to file a bond in the Supreme Court in the sum of $34,000 to be approved by the court. Judge Archbald of the superior court was commissioned to justify the sureties upon the bond to be filed. On the 4th of August, a bond by Franklin Bond & Indemnity Corporation was held insufficient. Again decedent applied for a writ of supersedeas which was granted.

On the 23rd day of December he posted a bond executed by Agnes and Louise, which was likewise referred to Judge Archbald for justification. Findings by Judge Archbald were reported to the Supreme Court upon which the bond signed by Agnes and Louise was approved. In order to indemnify the Franklin Bond and Indemnity Corporation, Robert and Agnes conveyed to it by deed all of the property involved in this action. Upon the failure of that bonding company to qualify, it reconveyed to Robert by quitclaim deed. In order to qualify Agnes and Louise upon the supersedeas bond which they had given in the Rosenfeld case, on December 23, 1932, Robert conveyed to them all of the property involved in this action. During the period in which the Rosenfeld judgment was entered and appealed, another judgment was entered in the Superior Court of Los Angeles County against Robert for the sum of $3,316.64 in favor of the Carsten's Packing Company. This case likewise was appealed and a stay bond was executed by Agnes and Louise as sureties.

Robert died October 3, 1935. The Rosenfeld judgment was reversed and terminated prior to his decease. The judgment in the Carsten's Packing Company action was affirmed two months after the death of Robert and thereafter satisfied. By his last will executed on the 19th day of September, 1935, Robert bequeathed all of his property in equal shares to Emma and Louise. By the same instrument he referred to the Sierra Madre property as ''my property''

and directed disposition of it after his demise. The executor named by decedent in his will having declined to sue for the recovery of the property described in the complaint, Emma filed this action on March 12, 1938, to recover for the estate all of the property conveyed by Robert to Agnes and Louise, upon the theory and claim that they were not the actual owners but that they held the titles in trust for Robert and for his use and were resulting trustees by reason of the circumstances under which they received the property. All of the material allegations of the complaint were put in issue by the answer of respondents.

The findings of the court are substantially as follows: that the title of the twenty-one parcels of realty described in the complaint stood of record in the name of respondents at the time of the decease of Robert; that they are now the actual owners; that they never held the title as trustees for Robert; that upon Robert's request, Agnes and Louise qualified and justified as sureties upon a supersedeas bond; that the conveyance of the properties was not made solely for the purpose of qualifying respondents as sureties; that at the time of justifying as sureties, defendants testified in the presence of Robert that they were the owners in fee simple of said properties; that there was never an agreement to reconvey the properties to Robert; that the conveyance of said properties was intended by Robert to vest the legal and equitable title to the properties in respondents and to make them absolute owners thereof; that it was not agreed that the conveyance was for the purpose solely of qualifying respondents to justify on the supersedeas bond; that Agnes and Louise never agreed at any time to reconvey the properties to Robert; that the Rosenfeld action was appealed, reversed and terminated; that prior to the death of Robert, Agnes and Louise did not by deed reconvey the properties to him; that at all times after the conveyance to respondents, they were the owners and are now the owners in fee simple of all the properties and the deed is of record in the official records of Los Angeles County; that at the time of the conveyance Robert and Agnes were husband and wife and lived together and continued so to do until his decease; that Robert considered respondents to be the owners in fee simple; that after the conveyance he did not exercise undisputed, uncontrolled and absolute dominion over the properties until his death; that Robert published his last will and

testament September 19, 1935; that it was probated in the Superior Court of Los Angeles County; that the executor named was made a party defendant herein because he refused to be a plaintiff; that Louise was substituted as administratrix with will annexed and she likewise properly refused to bring the action; that by the terms of his last will, Robert expressed no intention that he considered the properties to belong to him; that the properties were conveyed for a good consideration; that there is no obligation upon the part of respondents to reconvey the properties to Robert's estate; that the conveyance was made for the consideration of love and affection for the reason that Robert expressly desired to avoid the creation of a trust in respondents; that the conveyance to respondents was not made to hinder, delay or defraud creditors; that it was made for the purpose of creating a freehold interest in Agnes and Louise and with the avowed intention of avoiding the creation of a trust; that after the receipt of the conveyance respondents executed a supersedeas bond in the Rosenfeld case and were required to justify; that at the time of the justification Rosenfeld contended that Robert could not qualify sureties by a conveyance to them of his own property; that such contention was argued before the Supreme Court of California which thereafter decided contrary to such contention and approved the bond executed by respondents as sureties.

Upon such findings, the court concluded that respondents are absolute owners in fee simple of the properties and that their titles should be quieted to all of the properties; that they have never held the properties in trust for decedent or for anyone, and never reconveyed them to decedent prior to his decease; that at the time of the conveyance Robert did not intend to impress a trust and did not impress a trust of any kind upon the properties; that the actions are barred by the statute of limitations; that plaintiff is barred from claiming an interest in any portion of the properties; that she is estopped from claiming ownership; that she has no right, title or interest in or to any portion of the properties.

The evidence concerning the events which were given in proof for the purpose of establishing a trust and for the purpose of defeating it is sharply conflicting. The position of appellant as an heir at law of decedent appeals strongly to every sentiment of the human breast. She is kin of the

first degree, in fact, the first born of the decedent. She came to him in the early years of his manhood and was the child of his first mate. There is no intimation that she was ever disloyal to, or neglectful of, the interests of her father. To decree that she is an outcast and entitled to no share in the estate of her father, contrary to his express bequest and under such circumstances as above recited appeals to us as operating an injustice.

But the power of the appellate court to upset a judgment arises only after it has decided that there is no substantial evidence to support the judgment. (*Crawford* v. *Southern Pacific Co.*, 3 Cal.2d 427, 429 [45 P.2d 183] ; *Albaugh* v. *Mt. Shasta Power Corporation*, 2 Cal.2d 751, 773 [73 P.2d 217] ; *Shapiro* v. *Shapiro*, 127 Cal.App. 20 [14 P.2d 1058].) Therefore, since we find that there is such evidence we can do no more than certify that the findings have substantial, evidential support and that the judgment must accordingly be approved. We cannot say upon a consideration of the whole case, that the judicial discretion has been abused.

█ Prior to his conveyance of the properties to respondents, decedent was absolute owner thereof except as his ownership was qualified by the community interest of his wife. (Civ. Code, §§ 678, 682, 687.) As absolute owner he was at liberty to dispose of his property as he wished. As community partners he and his wife were free of restrictions to make a gift of all they owned. Decedent's gift of the community estate to his wife, or with her consent, to his daughter Louise, meets with no inhibition in the law. Love and affection is a sufficient consideration for such conveyance. (26 C.J.S. 193, § 18.)

█ Appellant contends that because of the occurrences immediately preceding and at the time of the execution and delivery of the deed to respondents, and by reason of the necessitous circumstances of decedent at the time of the conveyance requiring a supersedeas bond, and because of the conduct of decedent with reference to the properties following the conveyance, all of the testimony of respondents to the effect that the conveyance was intended as a gift to them is of no substantial value.

It is true that there was some evidence that prior to the execution of the conveyance decedent declared his preference not to deed the properties to Agnes and Louise because of his fear that they would not be returned to him after his litigation had terminated and that he would not do so unless they reconveyed to

him. Also there is evidence that both respondents stated at the time of the negotiations that they would reconvey the properties if requested to do so by decedent. Agnes denied the statements attributed to decedent but appellant advanced no sufficient proof, argument or authority to meet the uncontradicted evidence that decedent was advised that if a contemporaneous reconveyance were made to him by respondents, the deed to them would be of no value and they could not justify as sureties. He was instructed that the conveyance must be absolute; that he might not regain title to his property; and at the time he stated that he understood the significance of the conveyance but that it was the only thing he could do. Thus, it was made clear to the grantor that his grantees would not hold the properties in trust but that his deed would vest title absolutely in them. The discussions preceding the conveyance, including the advice of competent counsel, leave no doubt that decedent acted with knowledge; that he was not under duress; that he was not the victim of a mistake, accident or fraud. Of course if a promise had been made in order to obtain the deed and that promise had been violated by the grantees, such would have been a situation that would require a different conclusion. ■ In the absence of such showing, it must be held that so far as the declarations made by the parties prior to the conveyance are concerned, the instrument was intended to be what it purports to be. (*Sheehan* v. *Sullivan,* 126 Cal. 189 [58 P. 543].) A parol agreement to create a trust of properties conveyed by grant deed can be established only by clear, convincing and conclusive evidence. *Ibid.*

■ Acting under the advice of counsel, decedent must have known, and he did know, that if he should convey the property in trust, respondents could not qualify as sureties on his appeal bond. Equity will not subject trust property to the satisfaction of judgments against trustees personally. (*Murphy* v. *Clayton,* 113 Cal. 153, 161 [45 P. 267]; *Breeze* v. *Brooks,* 71 Cal. 169 [9 P. 670, 11 P. 885].)

Appellant proposes that where a continuing promise is made in good faith, its breach effects a constructive trust by operation of law, citing *Lauricella* v. *Lauricella,* 161 Cal. 61 [118 P. 430], and *Cooney* v. *Glynn,* 157 Cal. 583 [108 P. 506]. Under the findings here, however, neither her proposition nor her authorities are apropos. In the Lauricella

case the defendant took title from her husband in trust for the benefit of herself and her husband's parents. She attempted to defeat the trust on the theory that it was void as being in violation of statutes then existing (847, 857, Civ. Code) forbidding an express trust in real estate whose purpose was to have the trustee convey to a third person. It was held however that a constructive trust was created by reason of her false promise to perform the agreement admittedly made with her husband. In the Cooney case, Glynn had taken title to the property of his mother who resided with him with the express understanding that he should hold the property in trust for his sister, the plaintiff. For years he frankly avowed the trust, only later to repudiate it after he conceived that time had eliminated all evidences of his obligation. It was his violation of his parol promise out of which the trust arose.

With reference to the occurrences subsequent to the delivery of the deed, it is argued that there was no change in the behavior of the decedent toward the properties; that he told Mr. Beuttler that he made the conveyance to respondents so they could qualify on his bond; that, although he conveyed the properties to respondents, he caused all of the collections from the properties to be entered on the books of his corporation and all payments for taxes and other expenses of the properties to be made by the corporation; that not only did Louise keep the books of the corporation and make the entries of collections and disbursements but that neither did she nor her mother ever assert control over the properties; that practically the only money from the properties received by Louise was that paid her for keeping books; that neither she nor her mother had a separate bank account; that the widow stated to Judge Archbald, when justifying on the supersedeas bond, that she would deed the properties back to decedent "if he asked me." From these facts it is contended that an absolute alienation could not have been intended by either the grantor or the grantees.

But in spite of these circumstances, it appears to have been established to the satisfaction of the trial court: that decedent was advised, prior to the conveyance, that the deed was irrevocable; that his counsel stated to him their fears that if the trust relation should appear it would defeat the purpose of the conveyance; that at the hearing before Judge Archbald, decedent and his counsel heard the testimony of

Agnes to the effect that she had made no agreement with or promise to decedent to reconvey the properties to him; that decedent never asked for a reconveyance of the properties; that decedent paid a gift tax; that in discussions with reference to a reconveyance decedent objected to the payment of another gift tax in order to regain title and ownership and he declared to his counsel that since *"the property was where he wanted it anyhow, he saw no reason for asking for a deed back and paying another gift tax on it; that he was going to leave the property where it was."* If this was the attitude of his mind after the conveyance, it was sufficient evidence, if believed, to overcome the evidentiary value of all the circumstances recited by appellant in support of her contention. Such declarations by decedent were sufficient to evince an affirmance of the absolute grant to his wife and daughter. In view of such disclosures it was not an unreasonable inference that after thus confirming his grant, decedent chose to devote his remaining years to the preservation of the estate which he and his wife had accumulated and that it was the preference of his two beneficiaries that he continue in the exercise of his experienced judgment rather than that they should too hastily embark upon a joint managerial career.

Because the widow testified that she would have given the properties back to decedent if he had asked her to do so appellant fallaciously concludes that an agreement by respondents with decedent to reconvey has been established and that therefore under such agreement the estate is entitled to such reconveyance, citing *Anderson* v. *Nelson,* 83 Cal.App. 1 [256 P. 294]. But in that case the decedent made a conveyance of his properties to his son under the latter's promise to reconvey if the grantor should request it after the threatened litigation should have run its course. He never thereafter confirmed his deed as a gift, hence the promise constituted an agreement. In the instant case, under conflicting testimony, the court found specifically that decedent intended by his deed "to vest the legal and equitable title . . . and to make them absolute owners thereof."

Referring to the reference in his will to one of the parcels as "my Sierra Madre property" it was not incumbent upon the court to believe that decedent intended by such reference to annul all that he had done in the execution of the conveyance to respondents. Such statement was not bind-

ing upon his grantees. (*Chard* v. *O'Connell,* 7 Cal.2d 663, 667 [62 P.2d 369] ; *Bollinger* v. *Bollinger,* 154 Cal. 695, 706 [99 P. 196].) It may be declared to be the rule that a grantor of lands is estopped to repudiate his grant by a subsequent declaration either in his will or by a parol utterance to third parties. A solemn instrument, such as a grant deed, cannot be defeated by an informal statement to which the grantee was not even a witness. If so, no title would be secure against attack if the author survived the last conveyance or ex parte declaration. The last will of a testator has its own sphere of operations and when drawn with statutory precision is potent in effecting the succession of an estate. But if the author may have seen fit to make gifts of his properties *inter vivos,* his final testament becomes only a flourish and perhaps only the expression of his heart's desire on the day of its execution.

From the foregoing we must conclude that the findings have substantial support in the evidence and that the decision based thereon is in accordance with law. In view of such holding, it will be unnecessary to discuss the other points raised by appellants.

Judgment affirmed.

McComb, J., concurred. Wood (W. J.), J., dissented.

Appellant's petition for a hearing by the Supreme Court was denied December 22, 1942.