[Civ. No. 8159.   Third Dist.   June 26, 1953.]

ALVA P. WILCOX, Respondent, v. JOHN C. SALOMONE et al., Appellants.

Philip H. Angell and Rawlins Coffman for Appellants.

Ira M. Shadwell for Respondent.

SCHOTTKY, J.—Respondent commenced an action against appellants to have a deed to certain real property declared to be a mortgage and that appellants be barred of all right in said real property except as to a lien for the unpaid balance of the loan. Appellants filed an answer denying the material allegations of the complaint and also filed a cross-complaint seeking to quiet their title to said real property as against the claims of respondent. Following a trial before the court, sitting without a jury, the court found substantially in accordance with the allegations of the complaint and judgment was entered decreeing that the deed in question was a mortgage and respondent was the owner of the real property in controversy, subject to lien in favor of appellants for $3,620.80, the unpaid balance of the loan, with interest

at the rate of 1 per cent per annum from June 30, 1951, and taxes in the sum of $191.80. This appeal is from said judgment.

Appellants attack the judgment as being unsupported by and contrary to the evidence.

In arguing for a reversal of the judgment appellants urge three major contentions:

1. There is insufficient evidence to support the finding that the deed absolute was a mortgage.

2. That the trial court erred in admitting over objection statements made by respondent and his deceased wife to third persons, out of appellants' presence, that respondent and his wife were owners of the property in question.

3. That the trial court erred in admitting, over appellants' objection, documentary evidence which was self-serving and hearsay, and never seen by or its contents known to appellants.

Before discussing these contentions we shall give a brief summary of the evidence as shown by the record.

On or about September 26, 1945, the respondent and his wife leased certain real property located in Corning, Tehama County, improved with a garage building and dwelling quarters, from one White and his wife for a period of three years ending the 30th day of September, 1948. There was also an option to release given at this time. The rental was $60 per month. This lease was recorded. During the period of this leasing the respondent, assisted by his wife, made certain temporary improvements on the property.

During the month of March, 1946, the Whites indicated to respondent and his wife a desire to sell said real property, whereupon negotiations for a sale were entered into between these parties. After some preliminary negotiations respondent's wife applied to her parents, the appellants, for a loan of approximately $5,687 to handle the purchase of this real property. Some time subsequent to this application the appellants wrote the following letter to respondent and his wife:

"San Francisco
March 14-46

"Dear Val an Al.

"There's no doubt that you've been waiting for this letter before now, but we were doing some waiting ourselves also. Ted White was here las Saturday has we already stated, and he promised that, he, would mail us a photostatic copy of the note that Mr. Morgan has against the property but

so far we haven't received anything and I (Dad) also contacted the bank of three different occasions for information and advice, how to go about it—and how to transfer the money an so on. First I went to the bank where Mr. Demartini was supposed to be (18 & Castro & Market) well when I got there, was told that he had passed away about six months or so ago, but the Maneger in charge was very nice and told me how the transaction should be made, and again today I went to the Bank of America No. 1 Powell and was advised about on the same manner of procedure, which I will explain to you on the following page.

"In as much as we would like to have our financing secured on the same lines as the Morgan note reads, 'except the interest which would be, say, one per cent just to make it legal', you should and must draw the papers by a Title Insurance Company and not otherwise. They told me the B. of America of Corning probably could arrange to have it done by a Title Insurance Co., therefore said insurance would get you a clear title, would have it recorded, would upon signature of transfer pay the sum which the Morgan note ammount and also pay the sum stipulated to Ted White. I was told the money had to be put in escrow with the Title Ins. Co. therefore you will tell them to call on Bank of America No. 1 Powell, Day and Nite Bank, and its agreed the bank will then call me to go there and make the transfer of said money's. Now then, I don't know if you will agree with said advise but they all told me that, it was the proper and surest way to transact business of this kind Ted White gave me his word 'if it ammount to anything' that he would not claim any rent after March 1th, but the time it will take to consumate the deal would be considered paid by that last month of the lease and rent set to him after that—date would be deducted from the price stated, and said for you to have the papers made and he and his wife will go there to sign them. Thats about all the advise I have gathered and can give you but you should also investigate on your own, dont be afraid go to the bank and ask if the procedure I have recomended is the proper one or not, and please let me know about it. But dont confide this to Mr. Morg. I was told not to, but would like to know, how his note is worded, if he is kind enough to tell you. Then go ahead as long as you want the place get it over with.

"Here in inclosed is Ted White Grant Deed. 'deed of purchase' and you will notice it was andled by Title Ins.

& Guaranty Co. of S.F. tru the Bank of Corning. Your lease is enclosed also. take care of both documents. Before closing will say thing are about the same here, so with best regard to both of you

"Love,

"Mother & Dad

"P.S. Dont get it wrong about the wording of the note similar to Morg. that is only protection on both sides and the interest will be just to make it legal.

"P.S. Please state the amount required."

In April, 1946, a deed of the property in question was made from the Whites to the appellants as joint tenants. It is contended by the respondent, and alleged in the complaint that this deed absolute was taken by the appellants to secure the loan of the purchase money by appellants to plaintiff. Respondent testified that a note for $5,687 was executed by himself and his wife and delivered to appellants, but this was denied by appellants; and the note was not produced at the trial.

Appellants testified that they purchased the property for themselves and denied that they received a note for the purchase price. They admitted that they originally intended to lend the purchase price money to respondent and his wife, but stated that they had later changed their minds before the execution of the deed itself. The letter from appellants to respondent and his wife, dated March 14, 1946, and hereinbefore set forth, showed clearly that they intended to lend the purchase money to respondent and his wife on that date, which was about two weeks prior to the transfer.

Mr. White, from whom the property was purchased, testified that appellants had both stated to him at the time of negotiating for the sale of the property that they would pay the purchase price, that they would lend it to respondent and his wife and let them pay them back at so much a month, and White testified further that that was his understanding throughout the entire transaction.

In the deposition of appellant John C. Salomone, taken on September 21, 1950, more than seven months before the trial, said appellant appeared to have no recollection that it was first understood and agreed that appellants were to advance the money for respondent and his wife, and it was apparently not until the letter of March 14, 1946, was produced at the trial that appellants admitted the prior conversations and

discussions, but testified that after such discussions they had changed their minds and decided to buy the property themselves.

After the transfer the respondent and his wife paid the taxes and insurance on the property, and made repairs and improvements costing $3,000 or more. Appellants introduced evidence that at respondent's request an endorsement was placed on the insurance policy to the effect that appellants were the owners of the property. The respondent and his wife also continued to pay $60 per month to the appellants, the sum which had previously been paid as rent to the prior owner, Mr. White. Appellant testified that the $60 payments were rent and not payments on any loan, and introduced evidence tending to show that the $60 monthly payment was treated as rent by respondent and his wife on their check stubs, in their records, and so reported on their income tax return. Appellants testified that the taxes and insurance paid by respondent and his wife were also a part of the rent, and testified further that the so-called repairs and improvements made by respondents were only such repairs and improvements as any lessee might make in order to adapt the premises to his business needs. However, respondent denied all of this and testified that the monthly payments were not rent but were payments on the loan; that the taxes and insurance were paid by himself and his wife as owners of the property and were not part of any rent; and that the improvements were made by himself and his wife as owners of the property.

Some time before the death of respondent's wife, dissension apparently arose between respondent and his wife and defendants. But following her death in December, 1949, until May, 1950, respondent remained in possession of the property and made further improvements and monthly payments to appellants. In May, 1950, respondent made a demand upon appellants for the deed to the property, he offering to pay off the alleged balance due on the alleged obligation. Appellants refused to answer this demand, claiming the property was theirs and that they would keep title themselves. Subsequent to this, respondent instituted suit against the appellants, alleging five various causes of action based on the foregoing. Appellants cross-complained for a quiet title judgment.

Appellants' first contention is that the evidence is insufficient to support the court's "findings, conclusions or judgment that the deed was a mortgage." Appellants argue that

the deed absolute to them created a presumption of law that they were the owners of the property described in the deed and that this presumption could only be overcome by clear and convincing evidence to the contrary.

■ It is presumed that a deed absolute on its face is what it purports to be. (17 Cal.Jur., Mortgages, §§ 56 and 57, and cases cited therein.) ■ However, it is a well settled rule that a deed absolute in form may be shown to have been intended as a mortgage, and that such a deed is a mortgage if intended as security for the performance of an obligation. (17 Cal.Jur., Mortgages, § 41; Civ. Code, § 2924.) ■■ The burden of proving that a deed absolute is a mortgage rests upon the party who alleges it, and the evidence must be clear, satisfactory and convincing; unequivocal and indisputable. (17 Cal.Jur., Mortgages, §§ 58, 59.) ■ Whether the evidence to show that a deed was intended as a mortgage is clear and convincing is a question for the trial court, whose determination on conflicting evidence is not reviewable on appeal. (*Rogers* v. *Mulkey,* 63 Cal.App.2d 567 [147 P.2d 62]; *Beeler* v. *American Trust Co.,* 24 Cal.2d 1 [147 P.2d 583].)

■ Although this is a three-party rather than a two-party transaction, wherein the one who takes title to the property holds it as trustee for the party to whom he loaned the purchase money, and also holds a lien as mortgagee for repayment of the loan, the usual rules applying to a deed absolute-mortgage case apply here. (2 Bogert, Trusts and Trustees, § 455; 17 Cal.Jur., Mortgages, §§ 53, 54.) The present case is what is termed "a resulting trust by way of a mortgage." (2 Bogert, Trusts and Trustees, § 455.)

It is apparent from the summary of the evidence hereinbefore set forth that the evidence is highly conflicting. It was for the trial court to resolve the conflict. Appellants argue correctly that the rule is that a deed purporting on its face to convey the title absolutely cannot be held to be a mortgage except upon clear and convincing evidence. But whether the evidence is clear and convincing is generally held to be a question for the trial court to determine. As we said in *Rogers* v. *Mulkey, supra,* at page 573:

"It has been declared repeatedly by our decisions that clear and convincing evidence is required to justify a court in finding that a deed which purports to convey land absolutely in fee simple was intended to be a mortgage. (See *Mahoney* v. *Bostwick,* 96 Cal. 53 [30 P. 1020, 31 Am.St.Rep. 175]; *Sheehan* v. *Sullivan,* 126 Cal. 189 [58 P. 543]; *Emery* v. *Lowe,*

140 Cal. 379 [73 P. 981]; *Wadleigh* v. *Phelps*, 149 Cal. 627 [87 P. 93]; *Couts* v. *Winston*, 153 Cal. 686 [96 P. 357]; *Todd* v. *Todd*, 164 Cal. 255 [128 P. 413]; *Kohn* v. *Parent*, 174 Cal. 570 [163 P. 1008]; *Lockhart* v. *J. H. McDougall Co.*, 190 Cal. 308 [212 P. 1]; *Carlson* v. *Robinson*, 7 Cal.2d 235 [60 P.2d 426].) But whether or not the evidence offered to change what appears to be the character of the instrument is clear and convincing is a question for the trial court to decide. (*Mahoney* v. *Bostwick, supra*; *Lockhart* v. *J. H. McDougall Co., supra*; 17 Cal.Jur., 757, sec. 59.) In such case, as in others, the determination of that court in favor of either party upon conflicting or contradictory evidence is not open to review upon appeal. (*Sherman* v. *Sandell*, 106 Cal. 373 [39 P. 797]; *Locke* v. *Moulton*, 132 Cal. 145 [64 P. 87]; *Beckman* v. *Waters*, 161 Cal. 581 [119 P. 922]; 17 Cal.Jur., 758, sec. 60.) As was said in this regard in *Wadleigh* v. *Phelps, supra*, 149 Cal. at page 637, 'the appellate court . . . will not disturb the finding of the trial court to the effect that the deed is a mortgage, where there is substantial evidence warranting a clear and satisfactory conviction to that effect. All questions as to preponderance and conflict of evidence are for the trial court.' "

Appellants next contend that the court erred in admitting in evidence over their objection certain oral and written declarations made by respondent's deceased wife relating to the nature of the transaction, and made out of the presence of appellants. These declarations were either testified to by witnesses to whom they were made, or introduced into evidence in their written form. They were of the same nature and all supported the contention that a loan and a mortgage were intended by the appellants in the transaction in question. Thus, they would be "self-serving declarations," and hearsay. They would be self-serving since they were in support of the interest of respondent and the deceased declarant. (10 Cal.Jur., Evidence, § 311.) They would be hearsay since they rest upon the veracity and competency of some person other than the witness offering them. (10 Cal.Jur., Evidence, § 288; Code Civ. Proc., § 1845.) Declarations of a person, deceased or a party to the action, made in the absence of the opposite party sought to be bound by them, which declarations are in support of the party's or declarant's own interest, are not admissible in favor of those who claim rights which the declaration would maintain. (10 Cal.Jur., Evidence, §§ 311, 331.) However, there are exceptions to the hearsay rule.

■ In *Whitlow* v. *Durst,* 20 Cal.2d 523, our Supreme Court said at page 524 [127 P.2d 530]:

"When intent is a material element of a disputed fact, declarations of a decedent made after as well as before an alleged act that indicate the intent with which he performed the act are admissible in evidence as an exception to the hearsay rule, and it is immaterial that such declarations are self-serving. Thus, in cases involving the delivery of deeds, declarations of the alleged grantor made before and after the making of the deed are admissible upon the issue of delivery, and it is immaterial that such declarations are in the interest of the party producing them. (*Williams* v. *Kidd,* 170 Cal. 631 [151 P. 1, Ann.Cas. 1916E 703]; *Donohue* v. *Sweeney,* 171 Cal. 388 [153 P. 708]; *De Cou* v. *Howell,* 190 Cal. 741 [214 P. 444]; see McBaine, *Admissibility in California of Declarations of Physical or Mental Condition,* 19 Cal.L.Rev. 231, 251.) Likewise, in gift cases declarations made by the grantor before, contemporaneously, and subsequent to the alleged gift are admissible though the statements be self-serving. (*Sprague* v. *Walton,* 145 Cal. 228 [78 P. 645].) In alienation of affections cases declarations of an alienated spouse subsequent to the defendant's alleged tortious acts are admissible as evidence of the spouse's state of mind. (*Adkins* v. *Brett,* 184 Cal. 252 [193 P. 251]; *Cripe* v. *Cripe,* 170 Cal. 91 [148 P. 520].)"

And in *Hansen* v. *Bear Film Co., Inc.,* 28 Cal.2d 154 [168 P.2d 946], the court quoted the foregoing language from *Whitlow* v. *Durst,* with approval, and said further, at pages 173-174:

"Appellants contend that the trial court erred in admitting in evidence oral and written declarations of ownership of the stock and of the company made by Oscar, not within the presence or to the proved knowledge of Josephine, but subsequent to the transfers to her and in derogation of them. (*Chard* v. *O'Connell* (1936), 7 Cal.2d 663, 667 [62 P.2d 369]; *Francoeur* v. *Beatty* (1915), 170 Cal. 740, 747 [151 P. 123]; *Bollinger* v. *Bollinger* (1908), 154 Cal. 695, 705 [99 P. 196]; *Miller* v. *Miller* (1942), 55 Cal.App.2d 199, 207-208 [130 P.2d 438]; *Taylor* v. *Bunnell* (1926), 77 Cal.App. 525, 534 [247 P. 240].) However, under well recognized exceptions to the hearsay rule, such declarations, made before, at the time of, or subsequent to the transfers, were properly admissible on the issue of delivery to Josephine (and it was found that the instruments were delivered to her), on the issue of a claimed gift, and also to show the intent or state of mind of Oscar."

In view of the foregoing authorities we are unable to agree with appellants' contention that the court erred in admitting evidence as to said declarations, but even if the court erred in admitting them we do not believe that it committed reversible error in so doing. For appellants in their testimony admitted the greater part of what was contained in the statements that respondent testified were made to him by his wife. As to the remainder of said declarations, such as statements made to others by the deceased wife of respondent that she and respondent were buying the property or that it was theirs, such statements, in our opinion, added little to the evidence. The instant case was tried by the court without a jury and was submitted on briefs. The trial judge stated that in weighing the evidence he would determine the weight to which it was entitled. The letter of March 14, 1946, the testimony of appellants themselves and the testimony of White amply supported the following statement in his memorandum of decision:

"The proof is 'clear and convincing' to me that the deal involved herein was originally that the wife's parents, defendants herein, were to buy the property for their daughter and son-in-law and I am satisfied this continued to be the deal. There was no good reason why Wilcox and wife should substitute one landlord for another; they already had a lease for some time to run on better terms than the alleged terms here. No, the parents bought the place to resell to the children and put title in their name just for security. Then when the daughter's feelings took some change and she became angry with her husband over something, perhaps justifiably, perhaps not, the parents' feelings also changed and the claim that they were only renting the place came to the fore. The use of the word 'rent' may support them somewhat, but it is common for persons buying either real or personal property on monthly payments to refer to those payments as rent. This certainly does not outweigh all the other evidence including the logical inferences which can be made."

It is clear that the trial court did not believe the testimony of appellants that they changed their minds after agreeing to lend respondent and his wife the purchase money, but did believe the testimony of respondent as to the giving of the note and the testimony of White that appellants told him that they were lending respondent and wife the money to buy the property. We are satisfied that appellants were not

prejudiced by the testimony which they contend was erroneously admitted.

In view of the foregoing we conclude that the evidence amply supports the judgment and that no prejudicial error was committed.

The judgment is affirmed.

Van Dyke, P. J., concurred.

A petition for a rehearing was denied July 20, 1953, and appellants' petition for a hearing by the Supreme Court was denied August 20, 1953. Traynor, J., was of the opinion that the petition should be granted.