[Civ. No. 8186.   Third Dist.   Sept. 29, 1953.]

CORDELIA A. SCHNEPFE, as Administratrix, etc., Respondent, v. GEORGE SCHNEPFE, Appellant.

Percy Napton and Arthur C. Huston, Jr., for Appellant.

A. G. Bailey and John A. Young for Respondent.

PEEK, J.—Plaintiff as administratrix of the estate of Charles C. Schnepfe, brought this action in equity to have a deed, absolute on its face, declared to be a mortgage. From the judgment entered in her favor defendant appeals.

Decedent Charles C. Schnepfe had two brothers, the defendant George Schnepfe, and William J. Schnepfe who died subsequent to the execution of the deed in question. Both George and William resided in Baltimore, Maryland. The deed which is here attacked was executed on July 22, 1933, by Charles as grantor to George and William as joint tenant grantees. It was delivered and recorded on August 16, 1933. At that time Charles was a widower, his first wife, Alfrida, having died on December 26, 1932. The property embraced within the deed consisted of approximately 423 acres of land, situated near Dunnigan in Yolo County. Seventy-three acres were planted to almonds, a portion of the remainder was planted to barley, and the balance was left for grazing. On June 1, 1934, Charles married Cordelia, the plaintiff administratrix. Charles died on April 19, 1941. William died

on September 6, 1947. On June 20, 1950, plaintiff was notified by defendant to vacate the ranch premises on or before January 1, 1951. On October 6, 1950, plaintiff filed her action against George as the surviving joint tenant named in the deed. At the conclusion of the trial the court found that decedent's estate was indebted to defendant in the amount of $10,000 and that upon payment of that amount, plaintiff was entitled to a reconveyance of the property. Judgment was entered accordingly. No time for payment was specified in the judgment, although in his memorandum opinion the trial court had ordered that a reasonable time be specified.

It would appear unnecessary to unduly lengthen this opinion to set forth in detail the numerous communications which passed between the decedent and his brothers, both prior to the execution of the deed in question and subsequent thereto, and which constitute the major portion of the evidence. A summary of the pertinent facts contained therein shows that sometime prior to May 1, 1933, Charles sought to obtain a renewal of a bank loan which originally was in the sum of $17,000 but which had been paid down to $8,000 and which was due on June 1, 1933. This covered approximately 260 acres and included the area of the orchard. A second note in the sum of $2,250, which covered the remaining acreage of the ranch, was not due until 1936. Because of the additional cost that would be charged by the bank Charles sought to obtain the money from his brothers, suggesting that he would deed the property to them and upon repayment of the money lent they would deed the property back to him. It was George's suggestion that the property be deeded to himself and William as joint tenants, for the reason, as he commented in his letters, they would not only obtain ample security for the money advanced but also might avoid any possible trouble with Charles' nephews and nieces should he die prior to the repayment of the loan.

On December 18, 1933, the matter of the lease was raised in a letter from George to Charles wherein the amount of rent was set at $800 per year for a period of three years. This sum was arrived at by computing the yearly taxes and insurance and 7 per cent interest on the $2,250 loan and five per cent on the $8,000 loan. Charles' reply was that the only reason he would care for a lease was that if some fatal accident should occur to both George and William he would then have something to show his relatives. The lease described George and William as the coowners with Charles

in possession; that the owners desired him to remain in that possession until the end of the lease or until his death should it occur prior to that date. It also contained a provision for termination thereof upon repayment by Charles of the amount due.

During his lifetime Charles remained in possession of the premises, paying the taxes and insurance on the property, and after his death these items were paid by the administratrix up to January 1, 1951. In addition he planted numerous trees, up to 100 or more in one year although such trees would not come into bearing for eight years or more. In addition he made major repairs to the dwelling house representing an expenditure in excess of $1,000 repaired the barn at a cost of $400, dug a well and installed a pump at a cost of $800 and purchased and installed an almond huller at a cost of $650. The total cost of these items was borne by Charles. Neither George nor William paid any part thereof nor was their permission sought prior to the making of the improvements. During the period following the execution of the deed and at George's suggestion, Charles made several attempts to sell the property either in whole or in part. In one letter George suggested that if Charles could sell the property he would have ample money on which to live for the remainder of his life. The value of the property at the time the money was advanced by George and William was shown to be in excess of $15,000 and immediately preceding the time of trial was appraised at approximately $40,000.

In addition to the evidence above summarized the widow and her son were allowed to testify over objections to statements made by the decedent to them but out of the presence of the grantees to the effect that Charles had given his brothers a deed as security; that he was indebted to them in the principal sum involved; that he had made payments of interest to them and that he hoped to pay them in full. It is this testimony which is the basis of the first contention advanced by appellant.

■ In the recent case of *Wilcox* v. *Salomone,* 118 Cal. App.2d 704 [258 P.2d 845] (hearing in the Supreme Court denied) this court was confronted with a like contention, and at page 712, quoting from *Whitlow* v. *Durst,* 20 Cal.2d 523 [127 P.2d 530], we said:

" 'When intent is a material element of a disputed fact, declarations of a decedent made after as well as before an alleged act that indicate the intent with which he performed

the act are admissible in' evidence as an exception to the hearsay rule, and it is immaterial that such declarations are self-serving. . . .

"And in *Hansen* v. *Bear Film Co., Inc.,* 28 Cal.2d 154 [168 P.2d 946], the court quoted the foregoing language from *Whitlow* v. *Durst,* with approval, and said further, at pages 173-174:

" 'Appellants contend that the trial court erred in admitting in evidence oral and written declarations of ownership of the stock and of the company made by Oscar, not within the presence or to the approved knowledge of Josephine, but subsequent to the transfers to her and in derogation of them. [Citing cases.] However, under well recognized exceptions to the hearsay rule, such declarations, made before, at the time of, or subsequent to the transfers, were properly admissible on the issue of delivery to Josephine (and it was found that the instruments were delivered to her), on the issue of a claimed gift, and also to show the intent or state of mind of Oscar.' "

■ Viewing the attacked evidence in the light of the rule enunciated in the above authorities, we cannot say that the trial court erred in admitting testimony relative to such declarations. ■ But if it were error to admit the same, again, as we said in the Wilcox case, we cannot say that it was prejudicial since much of the same was conceded in the letters from the defendant to Charles.

What has heretofore been said concerning the testimony of the widow and her son is equally applicable and likewise controlling as regards the admission of the income tax returns of the decedent.

It is next contended that the evidence in support of the conclusion of the trial court was neither clear, satisfactory nor convincing. ■ As defendant states, there can be no question but that a deed, absolute on its face, is what it purports to be, and that clear and convincing evidence is required to justify a court in finding that a deed was intended to be a mortgage. ■ "But whether or not the evidence offered to change the ostensible character of the instrument is clear and convincing is a question for the trial court to decide. [Citing cases.] In such case, as in others, the determination of that court in favor of either party upon conflicting or contradictory evidence is not open to review on appeal. [Citing cases.] As was said in this regard in *Wadleigh* v. *Phelps* [149 Cal. 627 (87 P. 93)], at page 637, 'the appellate

court . . . will not disturb the finding of the trial court to the effect that the deed is a mortgage, where there is substantial evidence warranting a clear and satisfactory conviction to that effect. All questions as to preponderance and conflict of evidence are for the trial court.' '' (*Beeler* v. *American Trust Co.*, 24 Cal.2d 1 [147 P.2d 583].)

When the evidence as disclosed by the record before us is reviewed with the familiar rule in mind that we must indulge in all favorable inferences and presumptions in support of the judgment, we must conclude that the evidence was sufficiently clear and convincing to warrant the conclusion of the trial court.

It is also contended that plaintiff is guilty of laches in that more than nine years elapsed before she obtained letters of administration and pursued decedent's rights thereunder. In support of this contention defendant refers to correspondence between himself and plaintiff as an acknowledgment by them both that Charles was the owner of the property. He further relies upon correspondence relative to negotiations between himself and the United States Treasury Department concerning federal estate taxes, which correspondence was denied admission by the trial court on the ground that the same was hearsay. ▮ Whatever may have been the content of the letters between plaintiff and defendant after the death of the decedent was wholly immaterial to a determination of the basic question before the trial court: the intent of the defendant and the decedent at the time the deed was executed in 1933. Clearly the evidence relied upon by defendant could in no way affect that question.

Respondent concedes that defendant's further contention that the judgment as entered is erroneous in that the court found that the interest on the principal was payable from the date of the signing of the findings, whereas the evidence, without conflict, shows that interest had been paid to January 1, 1950. It necessarily follows that the judgment should be so modified as to correctly reflect such fact.

▮ Lastly it is contended that the findings and judgment are subject to further attack for the reason that there is no period of time fixed within which plaintiff is required to pay the amount found to be due defendant and upon payment of which amount plaintiff as administratrix of the estate of her deceased husband would be entitled to a reconveyance from the defendant. However, the failure to include such matters in the judgment does not warrant a reversal but rather a

modification thereof. It appears from the order of the trial court directing counsel for plaintiff to prepare and submit findings and judgment that the court contemplated that the judgment would contain the specifications above mentioned. However, such procedure was not followed and the final judgment as entered contained no such provisions.

Although it is within the province of this court to make the judgment more certain by modification thereof (*Cohn* v. *Cohn,* 1 Cal.2d 313 [34 P.2d 1000]), it would appear that what is a reasonable time for payment is more properly a question for the trial court to determine after a consideration of the facts of this particular case. (*Bloom* v. *Bloom,* 207 Cal. 70 [276 P. 568].)

For the foregoing reasons the cause is remanded to the trial court to correct its finding and modify the judgment in accordance with the views herein expressed; otherwise the judgment is affirmed.

Van Dyke, P. J., and Schottky, J., concurred.