[Civ. No. 10375. Third Dist. Nov. 26, 1962.]

ENSHER, ALEXANDER & BARSOOM, INC., Plaintiff and Appellant, v. MARTHA ENSHER, Defendant and Respondent.

Dodge, Evans, Reyes, Brorby & Driscoll, McCarthy & Crow,
Dodge, Evans, Reyes, Brorby & Driscoll, McCarthy & Crow, Patrick J. McCarthy and Robert P. Brorby for Plaintiff and Appellant.

Steel & Arostequi, Robert W. Steel and John R. Hetland for Defendant and Respondent.

SCHOTTKY, J.—This is an appeal by appellant from an adverse judgment in an action to declare respondent to be the resulting or constructive trustee of certain real property, commonly known as "Elkhorn Ranch," for the sole use and benefit of appellant. The minute order and judgment entered after the completion of a 13-day trial indicated that appel-

lant's claim was barred by laches. Appellant's principal contentions on this appeal are that the trial court erred in failing to make findings on all material issues and, as a corollary, the findings made do not support the adjudication of laches. We believe there is merit to appellant's contentions and therefore the case must be remanded in order that more complete findings be made.

That part of the evidence which is uncontradicted presented the following situation: Homer Ensher, deceased husband of respondent, was at all times subsequent to 1939 until his death in 1957 a shareholder and president of the board of directors of appellant corporation, and for most of that time was also the general manager. During this period of time all of the stock in the corporation was owned by Homer and several blood relatives. In February 1946 title to the land upon which appellant seeks to impress a trust in this action was taken in the name of Homer Ensher and remained in his name at the time of his death in June 1957, at which time the title passed to his wife, the respondent in this action, as sole devisee of his will. At the time of the 1946 purchase Homer was president of the board, general manager, and owner of 2,250 shares in the corporation. The remaining 5,750 shares were owned by three blood relatives. The $202,500 purchase price of the property (hereinafter referred to as Elkhorn) was paid $52,500 in cash and the remaining $150,000 was represented by a note signed by Homer in his individual capacity and secured by a deed of trust on the ranch. Of the $52,500 in cash, $10,000 was in the form of a check drawn upon the corporation's account, made payable directly to the title company and signed by Homer. The remaining $42,500 was apparently paid, prior to the close of escrow, from funds drawn by Homer from the corporation as advance rental on Elkhorn, which property he had immediately, orally, leased to the corporation for one year. Homer collected rents on the property from the time of its purchase until his death, after which time rentals were paid to respondent. The land was leased to entities other than the corporation during much of that period. The corporation at times operated a packing plant and cannery and operated extensive farm properties, some of which it owned and some of which it leased. Asparagus was grown on Elkhorn and at the time of the Elkhorn purchase the corporation was in need of asparagus for its operation. No written

trust agreement between Homer and appellant corporation was executed at that or any other time.

It is undisputed that Homer suffered a heart attack in 1949 and that the board of directors held a meeting at his home during the time of his convalescence. At that time it was suggested to Homer that he turn the title of Elkhorn over to the corporation. Although the versions of what transpired in response to this "suggestion" are contradictory and will be mentioned later, Homer retained title to Elkhorn and executed no written documents in relation to the proposed transfer.

Homer underwent an operation in 1954 and another in 1957. It was known that he had but a six months' life expectancy following the latter operation, and he did, in fact, die on June 19, 1957. Respondent was executrix of Homer's last will, and as the sole legatee and devisee eventually had Elkhorn distributed to her. Appellant made no claim against the estate in reference to Elkhorn, and in fact paid respondent $139,200, including Elkhorn rent, after Homer's death. The complaint which forms the basis of the instant action was filed approximately 13 months after Homer's death.

At the trial appellant introduced evidence over a period of ten days which, if believed, would substantiate a finding that Homer Ensher held Elkhorn in either a resulting or constructive trust for appellant at the time of his death, that the failure to devise it to the appellant was a violation of the trust, and that respondent consequently should be compelled to deliver title to Elkhorn to the appellant. Appellant acknowledges, as it must, the respondent's evidence, and inferences properly deducible therefrom, would support a contrary conclusion. We believe respondent's evidence would support findings that no trust arose upon the purchase of the property in 1946, or if it did, such trust was repudiated in 1949, and the subsequent delay in filing a claim was prejudicial and constituted laches. It was the office of the trial court to resolve the conflict on this evidence, and we have no power to usurp that function. The difficulty is that the trial court made no finding as to the existence of a trust, or repudiation thereof, and that the finding as to laches is inadequate.

The findings merely noted that legal title had been vested in Homer from 1946 to the date of his death, that he had at all times collected the rentals therefrom, and (finding number VI) "That between the date of the acquisition of said property by Homer E. Ensher and the date of the filing of this action.

said property had more than doubled in value, and witnesses had died who had knowledge of facts relevant and material to the matters alleged in plaintiff's complaint. That plaintiff's delay in bringing this action has resulted in prejudice and injury to defendant.''

The subsequent finding of ''fact'' was that appellant had been ''guilty of laches.'' Appellant contends that this is not a finding of fact but a conclusion of law, the validity of which is dependent upon the findings of fact (which the court did not sufficiently make).

Realistically, it has been said that ''ultimate facts are often not only conclusions drawn from other facts but are frequently indistinguishable from, and are, conclusions of law.'' (1 Stanbury, California Trial and Appellate Practice, § 718, p. 796.) This court has spoken of laches as a ''mixed question of law and fact.'' (*McNulty* v. *Lloyd*, 149 Cal.App.2d 7, 11 [307 P.2d 706].) Our Supreme Court in *Fairchild* v. *Raines*, 24 Cal.2d 818 [151 P.2d 260], said at page 830: ''Where a trial court makes findings upon all essential ultimate facts it is not error to fail to find upon evidential matters [citing cases] but this rule is not applicable in an equity suit where probative facts, which are material to the exercise of sound judicial discretion in the premises, and which may be sufficient to constitute a defense against the relief sought, are pleaded and are supported by competent evidence. Since, under such circumstances, the probative facts as pleaded in themselves constitute material issues, the rule stated in *James* v. *Haley* (1931) 212 Cal. 142, 147 [297 P. 920], is controlling: 'Ever since the adoption of the codes, it has been the rule that findings are required on all material issues raised by the pleadings and evidence, unless they are waived, and if the court renders judgment without making findings on all material issues, the case must be reversed.' ...''

Because of the trial court's failure to resolve the conflicting evidence and find on such material issues as the possible existence of an enforceable trust agreement in 1946, or the subsequent repudiation thereof, we are unable to intelligently evaluate the finding of laches.

Certainly, finding number VI quoted above is not sufficient. The trial judge informed the parties toward the latter part of the trial that he did not believe a case of laches

would be made out considering only the period from Homer's death to the date of the complaint in this action. Therefore, events of the period before his death and subsequent to 1946 are the important ones. The doubling of the value of the property appears from the evidence to have occurred in the period 1946 to 1948. Both parties to this appeal appear to agree that the principal witnesses who died, besides Homer, were Mr. Zoller who was Homer's banker and advisor, and who was president of the bank which loaned part of the purchase price of Elkhorn, and Grover Bedeau who was the principal corporate attorney for plaintiff. Mr. Zoller died sometime prior to April 26, 1948, and (then Judge) Bedeau died shortly after Homer.

Considering the above facts and that appellant's theory was that a trust arose in 1946 and was continuously affirmed thereafter until Homer's death, the findings supporting the conclusion of laches are insufficient. Furthermore, appellant specifically objected to the failure to find on issues herein presented by this appeal and to the vagueness of the findings made. Not only were the objections disregarded but the court struck from the findings submitted by respondent, and which were signed by the court, a finding that ". . . Homer E. Ensher and defendant at all times from and after his acquisition of said property have claimed the legal title and full beneficial ownership thereof, and the plaintiff has at all times known of such claim."

Even if an enforceable trust arose out of the circumstances surrounding the 1946 purchase of Elkhorn, there is evidence from which subsequent repudiation of such trust could be inferred. Appellant contends that a finding on this repudiation issue is required as it is germane to a review of the trial court's discretion in finding laches. This contention must be sustained. We need not discuss all of the evidence concerning repudiation, but it is significant that the trial judge made the following comment just prior to the closing arguments: "And I will say to you, counsel for the plaintiffs, that at this point it does seem to me that there is at least a very strong showing of laches occurring following the conversation in 1949, in the conference at the decedent's apartment, in which it may be at least questioned whether these people, including a leader among them who was a member of the bar, were perhaps put upon notice as to the existence of a problem as to which prudent people should take some action." The meeting referred

to was that of the stockholders following Homer's heart attack in 1949, at which it was at least suggested that Homer turn the property over to the corporation. The evidence concerning the meeting is conflicting. Respondent testified that Homer replied to the group that the demand was preposterous and said, among other things, that Elkhorn was, and always had been, his property, purchased with his funds, and that they had no claim to it. Appellant denies this version. However, one of appellant's witnesses testified that respondent had "flared in," and had said "that's Homer's ranch," but that Homer had remained silent through all of this conversation. Again, all of the conflicting evidence concerning repudiation must be resolved by the trial court.

Germane to the question of repudiation is the final contention of appellant that testimony by respondent's witnesses to the effect that Homer had told them at various times subsequent to 1948 that he owned Elkhorn and that appellant had no interest in the ranch was inadmissible hearsay. The trial court overruled objections to the admission of these statements and indicated that the statements were relevant as circumstantial evidence tending to prove certain other matters which are at issue in the lawsuit, including repudiation. Appellant contends that since repudiation must be conveyed to the beneficiary statements bearing thereon related outside of the beneficiary's presence are irrelevant and cannot come within any exception to the hearsay rule. We agree with the trial judge's inference that the statements come within the so-called "mental state" exception to the hearsay rule. As stated in *Whitlow* v. *Durst*, 20 Cal.2d 523 [127 P.2d 530], at page 524: "When intent is a material element of a disputed fact, declarations of a decedent made after as well as before an alleged act that indicate the intent with which he performed the act are admissible in evidence as an exception to the hearsay rule, and it is immaterial that such declarations are self-serving. Thus, in cases involving the delivery of deeds, declarations of the alleged grantor made before and after the making of the deed are admissible upon the issue of delivery, and it is immaterial that such declarations are in the interest of the party producing them. (*Williams* v. *Kidd*, 170 Cal. 631 [151 P. 1, Ann. Cas. 1916E 703]; *Donohue* v. *Sweeney*, 171 Cal. 388 [153 P. 708]; *De Cou* v. *Howell*, 190 Cal. 741 [214 P. 444]; See McBaine, *Admissibility in California of Declarations of Physical or Mental Condition*, 19 Cal.L. Rev. 231, 251.) Likewise, in gift cases declarations made by the grantor

before, contemporaneously, and subsequent to the alleged gift are admissible though the statements be self-serving. (*Sprague* v. *Walton,* 145 Cal. 228 [78 P. 645].)...."

It has been said "[t]he rule is without exception, so far as occurs to us at the moment, that whenever the intention, feeling, belief, or other mental state of a person at a particular time, ..., is material to an issue under trial, evidence of such person's declarations at the time indicative of his then mental state are admissible in evidence. It is wholly immaterial whether such declarations were made in the presence of an adverse party to the litigation or not, or what the character of the litigation is...." (*Estate of Carson,* 184 Cal. 437, 445 [194 P. 5, 17 A.L.R. 239]; see also *Wilcox* v. *Salomone,* 118 Cal. App.2d 704 [258 P.2d 845].)

Whether Homer had repudiated the trust at any time (assuming arguendo that a trust existed) was certainly a material issue and statements concerning ownership openly made over a period of years were properly admitted. The weight to be given to such testimony is, of course, a matter for the trial court.

For the reasons hereinbefore set forth, it is necessary to reverse the judgment because of the failure of the court to make adequate findings on the issues. The case was thoroughly tried and we believe it is unnecessary to take further evidence. However, nothing herein contained shall be construed to preclude the trial court, should it be so advised, from recalling witnesses or taking such further evidence as it in its discretion may determine to be necessary to enable it to make the findings required hereby.

The judgment is reversed with directions to the trial court to make findings on the issues raised by the pleadings and hereinbefore discussed and thereafter to render judgment in accordance with the findings made.

Peek, P. J., and Brown, J.,* concurred.

Petitions for a rehearing were denied December 12, 1962, and the petitions of both parties for a hearing by the Supreme Court were denied January 23, 1963. Peek, J., did not participate therein.

---

*Assigned by Chairman of Judicial Council.